**Emma G. BARRERA and Nickolas S. Barrera, Appellants**

v.

**The STATE of Texas, Appellee.**

No. 14–03–00049–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 29, 2004.

James L. Norris, Houston, for State.

Bruce Robert Hardesty, Austin, for Appellants.

Panel consists of Justices ANDERSON, SEYMORE, and MURPHY.*

## OPINION

JOHN S. ANDERSON, Justice.

Appellants Emma G. Barrera and Nickolas S. Barrera appeal from a final judgment (1) declaring the status of four assets, (2) ordering one of the assets turned over to the Harris County Constable for sale, and (3) applying the proceeds to Emma's unpaid final judgments owed to appellee, the State of Texas. Because we conclude the trial court erred in rendering the summary judgments on which the final judgment rested, we reverse and remand for further proceedings.

## PROCEDURAL BACKGROUND

In 1986, Jack Wilmer Eatmon, as principal, and Emma Barrera, as surety, executed a bail bond in the amount of $20,000 for Eatmon's release pending appeal. When Eatmon failed to appear as required in February 1989, the trial court entered a judgment of forfeiture (judgment nisi). After a first citation was returned unexecuted, a second citation was issued to Emma on August 8, 1990, and she was personally served on August 15, 1990. A final judgment of forfeiture in favor of the State for the full amount of the bond plus costs (a total judgment of $20,153.00) was filed with the clerk on September 7, 1990.

In April 1999, the State filed a request to determine status of property and for turnover, naming only Emma as respondent. The State subsequently amended its pleadings to name both Emma and her spouse, Nickolas, as respondents and limited its request to four specific assets: 3000 N. Taylor Road, McAllen (the McAllen property); 6934 Heron Drive, Houston (the Houston property); 138.79 acres in Starr County (the Starr County Ranch); and a $50,000.00 certificate of deposit (the CD), alleged to be the remaining proceeds from the sale of land in Hidalgo County. Later, the State again amended its pleadings to allege Emma's failure to pay twenty-one additional judgments against her in bond forfeiture cases, for a total outstanding amount of $363,458.86.

Appellants answered and also filed a motion to dismiss, alleging the underlying judgment of forfeiture was void for lack of jurisdiction. The trial court denied the

---

* Senior Chief Justice Paul C. Murphy, sitting by assignment.

motion to dismiss; and, on the State's motion, ordered $1,000.00 in sanctions against appellants and their attorney.

Appellants then counterclaimed. Among other relief, they sought a declaratory judgment that the Houston property was their homestead and sought actual and exemplary damages for slander of title. They alleged they had lost a sale of the Houston property because of judgment liens the State had placed on the Houston property. The State pleaded sovereign immunity, asserted special exceptions, and alleged a general denial and various other defenses.

In October 2000, the State filed a motion for summary judgment requesting the court to (1) declare the McAllen property as appellants' legal homestead; (2) declare the Houston property to be non-homestead, community property, subject to joint management, control, and disposition and non-exempt from execution, levy, and forced sale; (3) declare the Starr County Ranch to be non-homestead, community property, subject to joint management, control, and disposition and non-exempt from execution, levy, and forced sale; (4) declare the CD to be community property, subject to joint management, control, and disposition and non-exempt from execution, levy, and forced sale and to order the CD be turned over to the Harris County Constable; and (5) dismiss appellants' counterclaim. Appellants opposed the motion, tendering in support their own affidavits, that of their attorney, and various real estate documents.

The trial court granted the State's motion in part, declaring all four properties to be community property, subject to joint management, control, and disposition. The court also declared the Starr County Ranch and the CD to be non-exempt and ordered the CD to be turned over. Final-

ly, the court dismissed appellants' counterclaim.

A month later, appellants filed their first amended counterclaim, reasserting their original claims and adding a claim for breach of contract. The latter was based on allegations (1) appellants and the State had entered into a contract under which the State would release the Houston property from "the effect" of the judgment liens if appellants would provide the State with certain affidavits drafted by the State or with other documentation, (2) appellants had complied with their obligations, and (3) the State refused to provide a release of lien. The same day, appellants filed a motion to disqualify the State's attorneys, Kathleen Braddock and Mark Font. In the motion to disqualify, appellants alleged, in part, Braddock and Font would be material witnesses on the question of whether appellants and the State had reached an agreement regarding release of the lien. The trial court denied the motion to disqualify and, on the State's motion, struck appellants' first amended counterclaim.

In August 2002, the State filed a second motion for summary judgment, requesting a partial summary judgment that appellants had abandoned any homestead claim in the Houston property. In support, the State attached, among other items, a "designation of homestead and affidavit of non-homestead" executed by appellants on April 17, 1995, in which they claimed the McAllen property as homestead. The State also attached documents concerning Nickolas's misdemeanor perjury conviction, which was based on his April 1, 1999 execution of an affidavit in which he swore the Houston property was his homestead: "My wife and I purchased this property in 1968 and have declared it our homestead, for all purposes including taxes since that time. . . . My wife and I have not declared or designated any other property as our

homestead for taxes or any other purpose since that time."

Appellants responded, relying on exhibits attached to their response to the State's first motion for summary judgment. In addition, they attached Nickolas's affidavit in which he attested the McAllen property was titled in his name alone and Emma never had an ownership interest in the property. He also stated it was not his intent to claim a homestead exemption on the McAllen property.

The trial court granted the State's motion for summary judgment and subsequently signed a final judgment, which provided:

On November 10, 2000, and September 17, 2002, in the above styled case, the Court granted the State of Texas two Partial Summary Judgments. It is therefore ORDERED ADJUDGED AND DECREED that:

1. The real property commonly referred to as 3000 N. Taylor Rd., McAllen, Hidalgo County, Texas is community property, subject to joint management control, and disposition.

2. The real property commonly referred to 6934 Heron, Houston, Harris County, Texas, is community property, subject to joint management control, and disposition.

3. The real property described as the 138.79 acre Starr County Ranch is community property, subject to joint management, control, and disposition and such property is not exempt from execution, levy, and forced sale under the laws of the State of Texas.

4. The $50,000 certificate of deposit at First National Bank is community property, subject to joint management, control, and disposi-

tion and is not exempt from execution, levy, and forced sale under the laws of the State of Texas and the certificate, together with any papers necessary to redeem or levy upon the certificate, shall be turned over to the Constable of Harris County, Texas, who shall take whatever steps are necessary to receive the funds, and after expenses, apply the proceeds to Defendant Emma Barrera's unpaid final judgments owing the State of Texas.

5. Nickolas Barrera and Emma Barrera abandoned their homestead interest in the real property described as Lot 9, Block 18, Bayou Oaks Section 1, an addition in Harris County, Texas commonly referred to as 6934 Heron, Houston, Texas 77087 and said property is not exempt from execution, levy and forced sale under the laws of the State of Texas.

After considering the evidence submitted by the parties to the Court on the attorney fees issue, the Court ORDERS, ADJUDGES AND DECREES that the State of Texas is entitled to attorney fees in the amount of $ NONE.

Defendant Emma Barrera has failed to satisfy twenty-one (21) final judgments entered by the District and County Criminal Courts at Law of Harris County, Texas, in favor of the State of Texas in bond forfeiture cases. The aggregate amount due on the unpaid judgments is $363,458.86.

It is, therefore, ORDERED, ADJUDGED, and DECREED that the State of Texas is entitled to a final judgment for the unpaid judgments in the amount of $363,458.86 and attorney fees in the amount of $————, a total judgment of $365,458.86. The Court finds

that the award of attorney fees and the two partial summary judgments disposes of all claims brought by the parties, making this a final judgment. All relief not expressly granted herein is denied.

## DISCUSSION

### *Issue One: Failure to Dismiss because the Underlying Judgment is Void*

In issue one, appellants argue the trial court erred in not dismissing the case because the underlying final judgment on the bond forfeiture is void. They contend the underlying judgment is void because, as they correctly observe, the final judgment was rendered before Emma Barrera, the defendant in that suit, was required to answer. *See* TEX.R. CIV. P. 239 (providing default judgment may be rendered "[u]pon such call of the docket, or at any time after a defendant is required to answer"); *Surety Ins. Co. of Cal. v. State*, 514 S.W.2d 454, 456, 457 (Tex.Crim.App.1974) (stating judgment entered before expiration of the minimum time required by rules for an answer is void and also stating appeal by bill of review or writ of error is exclusive method by which to challenge default judgment).[1] Emma did not challenge the underlying judgment by bill of review or writ of error.

■ Appellants, however, contend because the judgment is void, they may attack it "at any time and in any proceeding." [2] This court rejected a similar argument in *Nguyen v. Intertex, Inc.*:

Nguyen maintains that, because the judgment in the first lawsuit is void, it may be attacked at any time, and there-

fore he is not required to satisfy the requisites of a bill of review. This is not correct.

The Texas Supreme Court has held several times—although not recently—that when the plenary power of the court rendering the judgment has expired, a bill of review is the exclusive method for attacking a judgment entered in a case in which the court had jurisdictional power to render it. *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex.1985) (per curiam); *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 710 (1961); *see also* TEX.R. CIV. P. 329b(f). The only exception to this rule is when the court rendering the judgment had no "jurisdictional power" to enter a judgment. *Middleton*, 689 S.W.2d at 213. The court has "defined 'jurisdictional power' in this sense to mean 'jurisdiction over the subject matter, the power to hear and determine cases of the general class to which the particular one belongs.'" *Id.* In fact, in response to a similar claim that a judgment was void and that a motion to vacate it should have been granted, the Supreme Court did not distinguish between a void and a voidable judgment. It held the following:

> We find it unnecessary to decide whether the consent judgment was void or merely voidable. In either instance, a bill of review is the exclusive remedy since the time for an appeal from the . . . judgment has expired. The Court of Appeals cites *Freeman v. Freeman*, 160 Tex. 148,

---

1. Citation was served on Emma on August 15, 1990. Her answer was therefore due September 10, 1990. *See* TEX.R. CIV. P. 99(b), (c). The trial court rendered judgment no later than September 7, 1990. In addition, the citation was filed with the district clerk on August 29, 1990, so the earliest a default

judgment could be rendered was September 10, 1990. *See* TEX.R. CIV. P. 107, 239.

2. In support, they cite *Mercer v. Phillips Natural Gas Co.*, 746 S.W.2d 933, 936 (Tex.App.-Austin 1988, writ denied).

327 S.W.2d 428, 433 (1959), and *Glenn W. Casey Constr. v. Citizen's Nat'l Bank*, 611 S.W.2d 695, 701 (Tex.Civ. App.-Tyler 1980, no writ) for the proposition that '[i]f a judgment rendered by a trial court is void, it may be set aside by that court at any time.' We disapprove of this statement.

*Middleton*, 689 S.W.2d at 213 (citations omitted). ***Thus, all errors other than jurisdictional deficiencies must be corrected on direct attack. Id. When time for direct attack by appeal, Rule 306a motion, or a restricted appeal has elapsed, a bill of review in the court rendering the initial judgment is the exclusive remedy to attack the judgment. Id.;*** TEX.R. CIV. P. 306a.

93 S.W.3d 288, 293, 294–95 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (footnotes omitted) (emphasis added). Appellants cite no authority that entry of a judgment before an answer is due is a jurisdictional deficiency, and we have found none.[3]

We overrule issue one.

### *Issue two: Failure to Dismiss Nickolas Barrera*

In issue two, appellants contend the trial court erred in refusing to grant their motion to dismiss Nickolas Barrera from this turnover proceeding because the underlying judgment was against Emma Barrera only. In support, appellants cite *Beaumont Bank, N.A. v. Buller*, in which the court stated, "Texas courts do not apply the turnover statute to non-judgment debtors." 806 S.W.2d 223, 227 (Tex.1991).

The turnover statute provides the trial court may "order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution." TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(b)(1) (Vernon Supp.2004). In *Schultz v. Fifth Judicial District Court of Appeals*, the supreme court observed:

Upon proof of the necessary facts, [the turnover statute] authorizes the trial court to order affirmative action by the judgment debtor *and others* to assist the judgment creditor in subjecting such non-exempt property to satisfaction of the underlying judgment. Such an order acts as a mandatory injunction against the judgment debtor and, if there are such parties, against the receiver and *any third parties interested in the property rights being adjudicated.*

810 S.W.2d 738, 740, 740 (Tex.1991) (emphasis added).

■ In *Plaza Court, Ltd. v. West*, this court, in dictum, recognized an exception to the general rule that the turnover statute does. not support a proceeding against an entity who is not a judgment debtor. 879 S.W.2d 271, 276–77 (Tex.App.-Houston [14th Dist.] 1994, no writ). That exception may apply when "the trial court makes a factual finding that the property on which execution is sought is subject to the possession or control of the judgment debtor, even if retained by a third party." *Id.* at 277 (citing *Norsul Oil & Mining Ltd. v.*

---

**3.** In their discussion of lack of jurisdiction to render a particular judgment, McDonald and Carlson state, "Also void is a default judgment rendered before the answer day on the citation." 5 ROY W. MCDONALD & ELAINE G. CARLSON, TEXAS CIVIL PRACTICE § 29.24 at 487 (1999) (citing *Finley v. Howell*, 320 S.W.2d 25, 28

(Tex.Civ.App.-Texarkana 1958, no writ)). The cited authority, *Finley v. Howell*, however, does not support the conclusion rendition of judgment before answer day is a jurisdictional deficiency. Moreover, *Finley* is not binding on this court.

*Commercial Equip. Leasing Co.*, 703 S.W.2d 345, 349 (Tex.App.-San Antonio 1985, no writ)); *see also Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (stating turnover statute allows a court to reach assets owned by and subject to control of a judgment debtor, even if those assets are in the hands of a third party).[4] In *Dale v. Finance America Corp.*, for example, the Fort Worth Court of Appeals held the trial court properly ordered turnover of community property held in a trust bearing the non-judgment debtor's name because the trust was subject to the judgment debtor's possession or control. 929 S.W.2d 495, 499 (Tex.App.-Fort Worth 1996, writ denied).

In the present case, the State sought a determination of the ownership of four specific assets and turnover of the same: three pieces of real property and a certificate of deposit. The State alleged all four properties were acquired during appellants' marriage and were therefore presumed to be community property. If that community property, despite also being in Nickolas's name, was subject to Emma's possession or control, the trial court could properly issue and enforce a turnover order against Nickolas. *Dale*, 929 S.W.2d at 498–99.[5]

The trial court did not err in declining to dismiss Nickolas. We overrule issue two.

### Issue Three: Rule 13 Sanctions

In issue three, appellants contest the trial court's February 11, 2000 order imposing $1,000 in sanctions against appel-lants and their attorney. This order was not incorporated into the trial court's final judgment; and, in their notice of appeal, appellants state only that they are appealing from the final judgment. *See* Tex. R.App. P. 25.1(d)(2) (requiring that notice of appeal "state the date of the judgment or order appealed from"). Moreover, appellants have paid the $1,000, thereby rendering the issue moot. *See Highland Church of Christ v. Powell*, 640 S.W.2d 235 (Tex.1982) (stating when judgment debtor voluntarily pays and satisfies judgment rendered against him, the cause becomes moot). Accordingly, we do not address this issue.

### Issues Four, Five, Six, Seven and Nine: Challenges to the Summary Judgments

INTRODUCTION AND STANDARD OF REVIEW

In issue four, the Barreras contest the trial court's declaration that the McAllen property was their joint management community property; in issue five, the declaration that the Starr County Ranch was non-exempt joint management community property; in issue six, the declaration the CD was non-exempt joint management community property subject to turnover; and in issue nine, the declaration appellants had abandoned their homestead interest in the Houston property. In issue seven, appellants contest the summary disposition of their counterclaim for slander of title, which rested on their claim the Houston property was homestead.

---

4. *Plaza Court* was a mandamus proceeding, and this court held the trial court abused its discretion when it ordered seizure of the businesses of the relator corporations without establishing on the record the ownership interest of the judgment debtors. *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 277 (Tex.App.-Houston [14th Dist.] 1994, no writ).

5. As the Fifth Circuit has observed, there is uncertainty among the Texas courts about how aggressive trial courts can be in enforcing turnover orders affecting the rights of non-judgment debtors. *See Maiz v. Virani*, 311 F.3d 334, 343 & n. 9 (5th Cir.2002).

■ We review a turnover order under an abuse-of-discretion standard. *See Beaumont Bank*, 806 S.W.2d at 226 (holding the court of appeals should have reviewed trial court's judgment ordering turnover under abuse of discretion standard and stating whether there was no evidence to support the turnover award would be relevant to determining whether trial court abused its discretionary authority in issuing the order). In the present case, however, the State prayed for, and obtained, a declaratory judgment regarding the status of the four properties in question, and it did so by means of summary judgment.[6]

We review declaratory judgments under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 1997); *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (citing *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex. App.-Houston [1st Dist.] 1995, no writ.)). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Id.* (citing *Giles*, 902 S.W.2d at 170). Accordingly, in reviewing the declaratory provisions in the present case, we look to the standards applicable to summary judgment. *See Hale v. Badouh*, 975 S.W.2d 419, 423 (Tex.App.-Austin 1998) (applying summary judgment standard of review to declaratory relief on issue of disclaimer of property which was subject of turnover order), *aff'd in part and rev'd in part on other grounds*, 22 S.W.3d 392 (Tex.2000).

The purpose of summary judgment is to eliminate patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 535 (Tex.App.-Houston [14th Dist.] 1997, no writ). The movant for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the non-movant. *Id.* at 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Id.* at 549. If the trial court grants a motion for summary judgment without stating the grounds on which it relied, we must affirm the summary judgment if any ground argued in the motion was sufficient. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Blan v. Ali*, 7 S.W.3d 741, 747–48 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

APPELLANTS' CHALLENGES

***Issues seven and nine: concerning the homestead question.*** In issue seven, appellants contest the summary disposition of their counterclaim for slander of title, which rested on their claim the Houston property was homestead. In issue nine,

---

6. Indeed, the only provision of the final judgment that purports to be a turnover order is the provision ordering that the CD, "together with any papers necessary to redeem or levy upon the certificate, shall be turned over to the Constable of Harris County, Texas...."

Although the State, in its brief, argued we should apply an abuse-of-discretion standard, at oral argument it conceded the summary judgment standards should be applied in the present case.

appellants contest the declaration appellants had abandoned their homestead interest in the Houston property.

The State does not directly address the first contention. Instead, the State contends simply the trial court correctly decided the homestead issues. In support, it offers the same four grounds it set forth in its second motion for summary judgment: (1) collateral estoppel based on Nickolas's misdemeanor perjury conviction, (2) the doctrine of unlawful acts, (3) appellants' 1995 signing of a document designating the McAllen property as homestead, and (4) appellants' having registered to vote in Hidalgo County.

■ For collateral estoppel to apply, the State was required to establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Strict mutuality of parties is no longer required. *Id.* at 607. The State claims the resolution of whether Nickolas Barrera had his homestead at the McAllen property or whether his homestead was the Houston property was the "very issue" litigated in the criminal perjury case. We disagree.

■ As set forth in the indictment, the issue in the perjury case was whether, on April 1, 1999, Nickolas

> unlawfully ... and under oath did make a false statement, namely, that he had never declared or designated any property other than 6934 Heron, Houston, Texas, as his homestead for taxes or any other purpose, whereas in truth and in fact [Barrera] had designated and declared 3000 N. Taylor Road, McAllen, Texas as his homestead for property tax purposes.

The fact essential to the judgment in the perjury case was whether Nickolas had designated and declared a property other than the Houston property as homestead, not whether that other property was actually Nickolas's homestead. Collateral estoppel does not support the trial court's summary judgment in favor of the State.

■ The State also argues, under the "unlawful acts rule," Nickolas's illegal conduct in claiming more than one homestead exemption prevents him from now claiming the exemption on the Houston property." As the supreme court explained in 1888, "In those cases where it is shown that, at the time of the injury, the *plaintiff* was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury he can not recover...." *Gulf, Colo. & Santa Fe Ry. Co. v. Johnson*, 71 Tex. 619, 621–22, 9 S.W. 602, 603 (1888) (emphasis added). The State has cited no case in which the rule was applied against a *defendant*, and we have found none. We decline to apply the rule in the context of the State's action to determine the status of property. Furthermore, although the unlawful acts rule might prelude appellants from recovering on their slander-of-title claim, the State did not argue this ground in the summary judgment motion that resulted in dismissal of that claim.[7]

---

7. In its first summary judgment motion, in which it requested dismissal of appellants' counterclaim, the State argued only (1) appellants were asking for a declaration on the same matter as was the State, (2) absence of malice, fraudulent intent, or heedless and reckless disregard of appellants' rights (necessary for exemplary damages) was conclusively proved, and (3) there was no evidence of malice, fraudulent intent, or heedless and reckless disregard of appellants' rights. Thus, the only grounds relevant to the slander of title claim were those directed at punitive damages, and the State's first summary judg-

■ The State points to a document appellants signed in 1995 declaring part of the McAllen property as homestead. In his affidavit, however, Nickolas explained the 1995 document appeared to have been signed in connection with his purchase of land in Alton, Texas. Nickolas further stated, "When I signed that document, I do not believe that any property descriptions were filled in. I never received a copy of that document after the property descriptions were filled in."[8]

Finally, the State points to appellants' voter registrations in Hidalgo County as "persuasive evidence" their home is on the McAllen property. Nickolas stated he and his wife registered to vote in Hidalgo County in 1993, "only because we were spending more time in McAllen than in Houston at that time, and we wanted to make sure we could vote when elections occurred. It was never our intent to claim the house and property located at 3000 North Taylor Road, McAllen, Texas as our homestead by registering to vote in Hidalgo County."

Both Nickolas and Emma stated the Houston property was their permanent residence, when absent, they had the intention of returning, and the most time they were away from Houston was two and a half months. Although in December 1996 Nickolas signed an application for residential homestead in Hidalgo County, he testified he did not date the document, intending that it be on file only to show he was the owner of the property. In April 1999, after signing the affidavit that was subsequently the basis for the perjury charge, Nickolas then knew the Hidalgo County Appraisal District "made an error," and he wrote them asking to remove the McAllen homestead exemption.

We conclude the State has not met its burden of showing there are no genuine issues of material fact and it is entitled to judgment as a matter of law on appellants' counterclaim for slander of title and on its own request to declare appellants abandoned the Houston property as homestead. *See Nixon,* 690 S.W.2d at 548. We sustain appellants' issues seven and nine.

■ *Issues four, five, and six: concerning community property.* In issues four, five, and six, respectively, appellants challenge the designation of the McAllen property, the Starr County Ranch, and the CD as non-exempt, joint management community property. They contend the summary judgment proof established the McAllen property as Nickolas's sole management community property and the Starr County Ranch and CD as either Nickolas's separate property or his sole management community property.[9]

---

8. The State does not contend the Barreras' affidavits are not competent summary judgment proof. *See* Tex.R. Civ. P. 166a(c) (stating interested witness's affidavit may be basis of summary judgment if affidavit is clear, positive, direct, free from contradictions, and readily controvertible).

ment motion did not challenge actual damages on the slander-of-title claim. A summary judgment movant cannot, on appeal, urge new grounds in support of its summary judgment motion. *See Bickers v. State,* 646 S.W.2d 668, 670 (Tex.App.-Dallas 1983, no pet.) (holding that to allow new grounds for a summary judgment to be urged on appeal without notice and opportunity to respond being given to nonmovant, and without trial court having opportunity to consider and rule on such grounds, would be contrary to what was then Texas Rule of Civil Procedure 166–A(c) authorizing summary judgment "on the issues as expressly set out in the motion, or in an answer or any other response.").

9. Texas Family Code section 3.202 provides in part:

(a) A spouse's separate property is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law.

(b) Unless both spouses are personally liable as provided by this subchapter, the

**McAllen.** Appellants presented the following summary judgment proof regarding the McAllen property: (1) Nickolas's affidavit, in which he stated the McAllen property was in his name only, Emma's name had never been on the title to that property, and the property had always been under his control and management; and (2) Emma's affidavit to the same effect. On appeal, the State does not discuss which parts of its summary judgment proof conclusively establish the community property status of the McAllen property, presumably because the State takes the position the McAllen property is appellants' homestead and is not attempting turnover of that property.

**Starr County Ranch.** Appellants presented the following summary judgment proof regarding the Star County Ranch: (1) Nickolas's affidavit, in which he stated he purchased the property with money earned in his law practice, none of Emma's money or money from the bail bonding business was used to purchase the property, and, as he and Emma agreed, he made all of the decisions about managing and operating the property; and (2) a June 21, 1990 quitclaim deed by which Emma deeded all of her interest in the property to Nickolas. The State presented the following summary judgment proof: (1) Emma's response, "[i]n the 80's," to a question about when "did y'all buy [the acreage]"; (2) her response that "we" let the neighbors run cattle on the property, and (3) Emma's having signed note and lien extensions for the property in 1993 and 1996.

**The CD.** Appellants presented the following summary judgment proof regarding the CD: (1) Nickolas's affidavit, in which he stated the CD was purchased with proceeds from land he sold that was located in Hidalgo County and was used for growing citrus trees, and all of the land had been in his name only; (2) the deeds for the property showing his name only; and (3) a June 21, 1990 quitclaim deed by which Emma deeded all of her interest in the property to Nickolas. The State presented the following summary judgment proof: (1) admissions from appellants' brief in opposition to the motion for summary judgment indicating that, when Nickolas sold the property, all the proceeds were temporarily placed in a joint checking account, he used some of the proceeds to pay bills appellants owed, and the amount left over was used to purchase the CD; and (2) Emma's deposition in which she stated she visited the citrus grove "[o]ften enough to check on the fruit to see how it was doing." [10]

---

community property subject to a spouse's sole management, control, and disposition is not subject to:

(1) any liabilities that the other spouse incurred before marriage; or

(2) any nontortious liabilities that the other spouse incurs during marriage.

(c) The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage.

TEX. FAM.CODE ANN. § 3.202(a)-(c) (Vernon 1998).

All property possessed during marriage is presumed to be community property, and a party must prove the separate character of property by clear and convincing evidence.

See TEX. FAM.CODE ANN. § 3.003(a), (b) (Vernon 1998). Despite the clear and convincing trial standard, at the summary judgment stage the court applies traditional summary-judgment jurisprudence in testing whether the evidence raises a genuine issue of material fact. *See Huckabee v. Time Warner Entm't. Co.,* 19 S.W.3d 413, 421–22 (Tex.2000) (discussing, in context of defamation case, difficulty in adapting review under a heightened evidentiary standard to Texas summary judgment practice).

10. On appeal, the State, without citation to the record, alleges it "submitted evidence that the Hidalgo County and Starr County property was also managed by Emma Barrera because she paid bills for such property, and she

We conclude the State has not met its burden of showing there are no genuine issues of material fact and it is entitled to judgment as a matter of law on its request to declare the McAllen property, the Starr County Ranch, and the CD as community property, subject to joint management, control, and disposition. *See Nixon,* 690 S.W.2d at 548. We sustain appellants' issues four, five, and six.

### Issue Eight: Striking of Appellants' December 13, 2000 Amended Pleading

In issue eight, appellants argue the trial court erred in striking their amended pleading filed December 13, 2000. Appellants' December 13 pleading added a new claim for breach of contract, based on allegations appellants and the State had entered into a contract under which the State would release property in Harris County from judgment liens if appellants would provide the State with certain documents. Appellants also added a defensive issue based on that claim. Additionally, on December 13, 2000, appellants filed a motion to disqualify the State's attorneys on the ground they would be material witnesses on the fact issue of whether an agreement had been reached. The State moved to strike the counterclaim on the grounds that was "an unconscionable, wholly meritless, bad faith, desperate, last-second attempt to try and have the undersigned attorney disqualified from representing the State of Texas." The trial court struck the counterclaim and the "defensive use of 'settlement' as a defense."[11]

Texas Rule of Civil Procedure 63 provides in relevant part:

Parties may amend their pleadings ... by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex.R. Civ. P. 63.

■■■ Absent an abuse of discretion, we will not overturn the trial court's decision to strike an amended pleading. *See Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980). A trial court, however, has no discretion to refuse an amendment to pleadings unless the opposing party presents evidence of surprise or prejudice, or the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Flo Trend Sys., Inc. v. Allwaste, Inc.,* 948 S.W.2d 4, 7 (Tex.App.-Houston [14th Dist.] 1997, no writ) (citing *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990)). The burden of showing prejudice or surprise rests on the party resisting the amendment. *Id.* (citing *Greenhalgh,* 787 S.W.2d at 939). Nevertheless, the trial court may conclude the amendment on its face is calculated to

---

was involved in discing the property, getting the property leveled for irrigation, keeping the ants off the property, hiring help to take care of the property, inspecting the property to check on the fruit, allowing neighbors to run cattle on the property, signing mortgage papers for the property, agreeing to the sale of the Hidalgo County property and allowing the sales proceeds of the citrus grove property

to be placed in their joint checking account." After reading all of the summary judgment proof, we have cited in the text what we believe to be the State's evidence in support of its motion.

11. The State also moved for sanctions, but the trial court denied the motion.

surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the case. *Id.* (citing *Greenhalgh*, 787 S.W.2d at 940).

■ Given the accompanying motion to disqualify the State's attorneys in the present case, we conclude the trial court could have determined the amendment on its face was calculated to surprise, prejudicing the State and unnecessarily delaying the case. The trial court did not abuse its discretion in striking the amended counterclaim.

We overrule issue eight.

### Issue Ten: Incorporation of Twenty–One Additional Judgments

The final judgment, rendered October 23, 2002, in the present case reads in part: "It is, therefore, ORDERED, ADJUDGED, and DECREED that the State of Texas is entitled to a final judgment for the unpaid judgments in the amount of $365,458.86 and attorneys fees in the amount of $———, a total judgment of $ $365,458.86." The $365,458.86 is the total of the amount owed on the judgment of forfeiture in the present case plus the amounts Emma Barrera owes on judgments in twenty-one additional bond forfeiture cases, which are not specifically enumerated in the final judgment at issue here. In issue ten, appellants argue alternatively (1) the trial court did not have plenary power to reform or modify the previous final judgments in the twenty-two cases because final judgment had been rendered in all cases more than two years previously, or (2) if the twenty-two judgments were not "final" until October 23, 2002, the State's request to determine sta-

tus of property and for turnover was premature and in bad faith.[12]

Appellants' argument overlooks the fact the final judgment in the present case was in response to a request for turnover pursuant to Civil Practice and Remedies Code section 31.002. That statute authorizes collection of a previously rendered judgment through a court proceeding. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(a) (Vernon Supp.2004). Under section 31.002, the judgment creditor, in this case the State, "may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding." *Id.* § 31.002(d). Under section 31.002(d), then, there was nothing to preclude the State from seeking the court's assistance in collecting the additional twenty-one judgments in the present proceeding.

■ Nevertheless, the trial court's use of the phrase indicating the State "is entitled to a final judgment for the unpaid final judgments," is inconsistent with the nature of the proceeding and the relief sought by the State. *See* 1A ALLEN E. SMITH, WEST'S TEXAS FORMS: CREDITORS' REMEDIES & DEBTORS' RIGHTS § 27.3 (3d ed.2000) (form for judicial order for enforcement of money judgment). The "final judgment" in this case should not have been for a monetary amount because final judgments had already been rendered for all of the amounts encompassed by the "final judgment" now before the court. Instead, the "final judgment" in the present case should have authorized action by some entity to assist the State in collecting the sums due on the earlier judgment of forfeiture in the present case and on the twenty-one judgments in the additional cases, as specifically identified by case

12. Because we are remanding the case for further proceedings, this issue is arguably moot. Nevertheless, we address it because it may arise again on remand.

number. *See id.* The final judgment before us is not in proper form.

With the preceding caveat in mind, we overrule appellants' issue ten.

### CONCLUSION

Having concluded the State failed to establish there were no genuine issues of material fact and that it was therefore entitled to judgment as a matter of law on the homestead and community property issues and on appellants' counterclaim for slander of title, we reverse the cause and remand for further proceedings consistent with this opinion.