Opinion issued October 30, 2008












 





In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00375-CV






NORMA VENSO, Appellant


v.


GARY WILLIAM HORTON, Appellee






On Appeal from County Court at Law No. 3

Galveston County, Texas

Trial Court Cause No. 05FD2676






MEMORANDUM OPINION




 Appellant, Norma Venso, appeals from the decree rendered in her divorce from 
appellee, Gary William Horton. 

 In her sole issue, appellant contends that the decree contains a provision that
violates the Employee Retirement Income Security Act ("ERISA"), see 29 U.S.C.
§ 1056(d)(1), (d)(3)(F) (2006), or constitutes an "illegal or legally incomplete
contract under Texas Law." 

 We dismiss.

Background


 In 1995, Venso and Horton were married. In 1997, Horton retired from his 29-year position with the AFL-CIO, and he began collecting his pension under the AFL-CIO Staff Retirement Plan ("the Plan"). At the time he retired, Horton was required
to designate a beneficiary, if any, of the survivor's benefit under the Plan. Horton
designated Venso to receive the survivor's benefit. To accommodate his election,
Horton was assessed $3000 annually by the Plan.

 In 2005, Venso petitioned for divorce from Horton. On December 11 and 12,
2006, at a bench trial, Venso and Horton testified in detail concerning the inventory
and appraisement of their property. On December 13, 2006, the parties announced
that they had reached an agreed property division, which they stated into the record.


 Specifically, the parties agreed that each would retain his or her own retirement
benefits. Specifically, Horton was to retain, inter alia,

 [t]he sums, whether matured or unmatured, accrued or unaccrued, vested
or otherwise, together with all increases thereof, the proceeds therefrom,
and any other rights related to any profit-sharing plan, Keogh plan,
pension plan, employee stock option plan, 401k plan, employee savings
plan, accrued unpaid bonuses, disability plan, or other benefits existing
by reason of husband's past, present, or future employment, in the
following plans: . . . [the Plan]. 


 With regard to the survivor benefit under the Plan, Horton testified that he now
wanted the benefit to go to his children from a prior marriage, rather than to Venso,
but that the Plan would not allow Horton to re-assign the survivor benefit. In lieu of
a re-assignment, Venso agreed that she would sign a contract concerning any survivor
benefit she received. Venso's counsel stated as follows:

 And there's one more thing I forgot to mention. Mr. Horton's pension
that he says that he cannot revoke the survivorship benefit to Miss
Venso. She has agreed that she will sign a separate contract agreeing
that if she receives that benefit--having survived him--then she will
give that money to his two children [of a prior marriage], 50/50. 


The trial court determined that the parties were satisfied with the property settlement
and approved the agreement. 

 Ultimately, however, the parties were unable to agree on the precise terms of
the separate agreement concerning Horton's pension.


 On January 8, 2007, Venso moved for entry of judgment on the decree and
appended a proposed decree, which contained the following provision:

 IT IS FURTHER ORDERED, as the parties have agreed, that [Venso]
will assign the survivor's benefit from [Horton's] AFL-CIO Staff
Retirement Plan, if any, to be payable in equal parts to [Horton's
children]. If [Venso] survives [Horton], and the AFL-CIO refuses to
assign the survivor benefit to any others, it shall remain payable to
[Venso]. 


 At a clarification hearing the same day, Horton objected that the provision in
the proposed decree did not reflect the parties' previous agreement. Specifically,
Horton complained that the provision, as worded, made the benefit payable to Venso
if the Plan refused to re-assign the benefit and that it had already been established that
the Plan would not re-assign the benefit. Horton suggested that the Plan deduct the
taxes prior to sending the funds to Venso and that Venso distribute the remaining
funds to Horton's children each month. Venso maintained that, although she would
not interfere with the benefit being re-assigned to Horton's children, she could not
have the funds come to her as income and then give the funds to the children. (1) 


 On January 25, 2007, Venso again moved for entry of the final decree. At a
hearing, the parties continued to disagree concerning the disposition of the survivor's
benefit. Stated generally, the trial court directed that an interest-bearing account be
set up, into which the survivor's benefit would be deposited, and the applicable taxes
would be withheld. Venso would then send the remaining funds in equal proportions
to Horton's children. The court also directed that if the parties later found that the
benefit could be assigned directly to the children through a qualified domestic
relations order ("QDRO"), "then that is the way it should be done."

 On the morning of January 31, 2007, Venso formally withdrew her consent to
the decree on the basis that the court had modified the terms of the decree. Later that
day, however, the trial court signed a final decree, in which the language concerning
the interest-bearing account was deleted and the following was substituted and
initialed by the parties' counsel: 

 IT IS ORDERED[,] as the parties agreed[,] that [Venso] sign a contract
in which she agrees that if she receives the survivor's benefit having
survived him [sic] from [Horton's] pension she will give that money to
the children of [Horton], 50/50, or their heirs.


It is this language that is the subject of this appeal.

 On February 20, 2007, Venso moved for a new trial, contending that the
language requiring her to make a separate contract for the benefit of Horton's
children violated ERISA. In addition, Venso contended that, as a matter of law, an
agreement to re-assign the survivor benefit could only be effectuated through a
QDRO. Venso asked the trial court to grant a new trial or modify its decree to replace
the language requiring her to execute a separate contract with language that a QDRO
be effectuated instead. After a hearing, the trial court denied Venso's motion but
directed that a QDRO be prepared by Venso's attorney.

 On April 23, 2007, the parties executed a QDRO, pursuant to which Horton's
two children were "each awarded a 50% portion of any benefits payable" to Venso
under the Plan.

Analysis


 Appellant complains on appeal that the provision of the decree, in which she
agreed to sign a contract stating that she would give to Horton's children any benefit
she received under the Plan, violates ERISA or constitutes an "illegal or legally
incomplete contract under Texas Law." We conclude that the issue presented is
moot.

 A case becomes moot if a controversy ceases to exist between the parties at any
stage of the legal proceedings, including the appeal. In re Kellogg Brown & Root,
Inc., 166 S.W.3d 732, 737 (Tex. 2005). An appeal becomes moot "when a court's
action on the merits cannot affect the rights of the parties." Zipp v. Wuemling, 218
S.W.3d 71, 73 (Tex. 2007); VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex.
1993). Generally, a party's completion of the actions at issue renders her appeal of
that issue moot. See Barrera v. State, 130 S.W.3d 253, 260 (Tex. App.--Houston
[14th Dist.] 2004, no pet.) (citing Highland Church of Christ v. Powell, 640 S.W.2d
235, 236 (Tex. 1982)); see also Labrado v. County of El Paso, 132 S.W.3d 581, 589
(Tex. App.--El Paso 2004, no pet.) (similarly, a suit to enjoin the performance of a
contract becomes moot once the contract has been performed); Grant v. Grant, 358
S.W.2d 147, 148 (Tex. Civ. App.--Waco 1962, no writ) (explaining that "[a]ppellate
courts will not decide moot or abstract propositions" and that "[a] case, issue, or
proposition is, or becomes moot or abstract, when it does not, or ceases to rest on any
existing fact or right").

 If there ceases to be a controversy between the parties because of events
occurring after the trial court has rendered judgment, "the decision of an appellate
court would be a mere academic exercise, and the court may not decide the appeal."
See Olson v. Comm'n for Lawyer Discipline, 901 S.W.2d 520, 522 (Tex. App.--El
Paso 1995, no writ). In such case, the appellate court is required to dismiss the cause.
See Gen. Land Office of Tex. v. OXY U.S.A., Inc., 789 S.W.2d 569, 570 (Tex. 1990)
(stating that if no controversy continues to exist between parties, appeal is moot and
court of appeals must dismiss cause).


 Here, Venso complains of the language in the decree stating, "IT IS
ORDERED [,] as the parties agreed [,] that [Venso] sign a contract in which she
agrees that if she receives the survivor's benefit having survived him [sic] from
[Horton's] pension she will give that money to the children of [Horton], 50/50, or
their heirs." The record shows that, after the decree was signed, the parties executed
a QDRO, pursuant to which Horton's two children were "each awarded a 50% portion
of any benefits payable" to Venso under the Plan. Hence, any rights Venso had to the
survivor's benefit under the Plan were wholly assigned to Horton's children in the
QDRO. See 29 U.S.C. § 1056(d)(1) (governing pension plan administration and
providing that "[e]ach pension plan shall provide that benefits provided under the
plan may not be assigned or alienated") (emphasis added); id. § 1056(d)(3) 
(providing that, as an exception to (d)(1), "Each pension plan shall provide for the
payment of benefits in accordance with the applicable requirements of any
[QDRO]."); id. § 1056(d)(3)(G) (stating that plan determines qualified status of
domestic relations order). Venso's completion of the action at issue renders her
appeal of the issue moot. See Barrera, 130 S.W.3d at 260. 

 In addition, Venso specifically asserts in her brief on appeal that she "does not
challenge the entry of the purported QDRO, and whatever legal effect that order may
or may not create." Venso complains only that "[t]he trial court directed the entry of
such a QDRO without removing the objectionable provision of the decree," that
portion requiring the parties "to make their own private contract about Ms. Venso's
survivor benefit." Venso asks us to modify the trial court's decree by deleting the
provision. Venso has not shown, however, that removing the provision, which
concerns a benefit in which she no longer has any legal interest, would affect an
existing right. See VE Corp., 860 S.W.2d at 84; Grant, 358 S.W.2d at 148
(explaining that "a case, issue, or proposition is, or becomes moot or abstract, when
it does not, or ceases to rest on any existing fact or right."). 

 Because Venso's right to receive the benefit has been wholly assigned to
Horton's children, Venso has not shown that a controversy still exists. See Gen. Land
Office, 789 S.W.2d at 570. If, at any stage of litigation, there ceases to be an actual
controversy between the parties, a case becomes moot. See Kellogg Brown & Root,
Inc., 166 S.W.3d at 737. We are prohibited from deciding moot controversies. See
Nat'l Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999). (2) Jurisdiction
over the underlying lawsuit depends on justiciability, and for a controversy to be
justiciable, there must be a real controversy between the parties that will actually be
resolved by the judicial relief sought. State Bar of Tex. v. Gomez, 891 S.W.2d 243,
245-46 (Tex. 1994).

 Having determined that there is no longer an actual existing controversy
between the parties with regard to the distribution of any survivor's benefit Venso
receives under the Plan, we conclude that this appeal is moot. Accordingly, it must
be dismissed. See Gen. Land Office, 789 S.W.2d at 570 (stating that if no controversy
continues to exist between parties, appeal is moot and court of appeals must dismiss
cause).

Conclusion


 We dismiss the appeal as moot.




 Laura Carter Higley

 Justice



Panel consists of Chief Justice Radack and Justices Nuchia and Higley.
1. Venso explained that, if the survivor benefit came to her and then she distributed the
funds to the children, the funds would be considered her income, which would carry
tax liability consequences for her and could jeopardize her eligibility for certain
benefits in the distant future. Venso explained that she could waive her right to
receive the benefit but that such action would not revert the benefit to Horton; rather,
under the Plan, Venso's portion of the benefit would simply be lost. 
2. We recognize that there are two exceptions to the mootness doctrine, neither of which
applies here: (1) the "capable of repetition yet evading review exception"; and (2) the
"collateral consequences exception." See Gen. Land Office of Tex. v. OXY U.S.A.,
Inc., 789 S.W.2d 569, 571 (Tex. 1990). The former applies when the challenged act
is of such short duration that the appellant cannot obtain review before the issue
becomes moot, and it has only been used to challenge unconstitutional acts performed
by the government. Id. The latter is invoked only under narrow circumstances, when
vacating the underlying judgment will not cure the adverse consequences suffered by
the party seeking to appeal that judgment. Marshall v. Hous. Auth. of City of San
Antonio, 198 S.W.3d 782, 789 (Tex. 2006).