**PLAZA COURT, LTD.; Plaza Court; Plaza Ct., Ltd.; York Plaza Professional Building, Ltd.; Baires, Inc.; Hospital Associates International, Inc. f/k/a Lentino Hospital Associates, Inc.; Lentino Surgical Associates, P.A.; Little York Hospital, Inc.; North Houston Energy, Inc.; Plaza Life and Energy, Inc. a/k/a Lamez Corporation; Plaza Medical Group, P.A.; Plaza Oil & Gas, Inc.; Plaza Pipe Line Company, Inc.; Texas Trin-**

---

ity Energy Company, Inc.; York Plaza Real Estate, Inc. a/k/a York Plaza Hospital and Medical Center; York Plaza Hospital and Medical Center, Inc.; and Plaza Cardiopulmonary Associates a/k/a Plaza Interpretation, P.A., Relators,

v.

Honorable David WEST, Judge, 269th District Court, Harris County, Texas, Respondent.

No. A14–94–0541–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 6, 1994.

Scott Rothenberg, Houston, for relators.

Richard T. Howell, Alvin L. Zimmerman, Houston, for respondent.

Before MURPHY, ELLIS and LEE, JJ.

## OPINION

MURPHY, Justice.

This original mandamus action involves two orders issued by the trial court in an effort to secure the enforcement of a turnover order. Relators contend the trial court abused its discretion in issuing the orders, which allowed the court-appointed receiver to take over the operation and records of all Relators. We conditionally grant the writ.

### PRIOR POSTURE OF THE CASE

The Real Party in Interest in this action is Cullen Center Bank & Trust ("Cullen Bank"). On October 26, 1993, Cullen Bank obtained a judgment for over $8.6 million, plus pre-judgment interest and attorneys' fees against Jorge A. Lentino and Eduardo P. Lentino (collectively "the Lentinos"), in trial court cause number 91–18878, styled

*Cullen Center Bank & Trust v. Eduardo P. Lentino, M.D., Jorge A. Lentino, M.D., and Marta A. Lentino.*[1] The jury in the case found that the Lentinos had wilfully committed fraud and fraudulently conveyed assets. The judgment, in addition to awarding Cullen actual and punitive damages, set aside several conveyances of property. Although the Lentinos appealed the judgment,[2] they failed to file a supersedeas bond. However, when Cullen Bank attempted to conduct post-judgment discovery and execute the judgment, the Lentinos refused to provide any post-judgment discovery, refused to appear for depositions, and refused to pay the judgment.

Cullen Bank brought a contempt action against the Lentinos, and on April 15, 1994, after conducting a hearing, the trial court entered a turnover order and appointed J. James Raymond as Receiver of all non-exempt property owned by the Lentinos.[3] The turnover order stated that the sheriff or constable could seize the listed property and was to forward the related documents and records to the registry of the court. The property relevant to the controversy before us was stock owned by each of the Lentinos, described as:

> *Stock* ... in Plaza Court, Plaza CT, Ltd., York Plaza Professional Building, Ltd., Baires, Inc., Hospital Associates International, Inc. f/k/a Lentino Hospital Associates, Inc., Lentino Surgical Associates, P.A., Little York Hospital, Inc., North Houston Energy, Inc., Plaza Life and Energy, Inc. a/k/a Lamez Corporation, Plaza Medical Group, P.A., Plaza Oil & Gas, Inc., Plaza Pipe Line Company, Inc., Texas Trinity Energy Company, Inc., York Plaza Real Estate, Inc. a/k/a York Plaza Hospital and Medical Center, York Plaza Hospital and Medical Center, Inc., and Plaza Cardiopulmonary Associates a/k/a Plaza Interpretation, P.A. (emphasis in original).

---

1. The jury assessed no damages against Marta A. Lentino.

2. *Marta A. Lentino, et al. v. Cullen Center Bank,* trial court cause number 91–18878, appeal number A14–94–0175–CV.

3. The trial court initially entered an *ex parte* Turnover Order on February 25, 1994. Following the contempt hearing, the court appointed the Receiver and entered an Amended Turnover Order, which eliminated two items originally listed in the February 25th Order.

Following unsuccessful attempts to obtain the Lentino's assets, on May 26, 1994, the Receiver presented the trial court with two *ex parte* motions: a Receiver's Motion to Authorize Further Action by Court's Receivership to Enforce Court's Previous Orders, and a Motion to Seize. The Motion to Authorize Further Action represented that when the Receiver attempted to obtain the property which the court had ordered turned over, the Lentinos claimed that the listed assets were not owned by them, but were owned by the E.L. York Plaza Living Trust and the J.L. York Plaza Living Trust ("the Living Trusts"), pursuant to a contribution by the Lentino Family Limited Partnership. The Motion to Seize attested that the Receiver had demanded that the Lentinos turn over to him all of their non-exempt assets, but that they had refused. The Lentinos do not dispute their non-payment of the judgment, and their refusal to turn over non-exempt assets.

### THE ORDERS

The same day, May 26, 1994, the trial court entered the two orders which are the subject of this mandamus action. The first, an Interim Order Authorizing Further Action by Court's Receivership to Enforce Court's Previous Orders, ordered: (1) the Receiver to employ persons necessary to operate the business of Relators and the Lentinos; (2) that funds of Relators and the Lentinos be used to pay the Receiver's expenses; (3) all parties and banks to cooperate with the Receiver; (4) the Receiver to take control of all bank accounts of Relators and the Lentinos, and to become the sole signatory on all bank accounts; (5) any banks in which Relators or the Lentinos had accounts not to honor any checks written by anyone other than the Receiver; (6) the Receiver to take control of any non-exempt assets of Relators and the Lentinos; (7) the Receiver to take possession of any post office boxes of Relators and the Lentinos, and to open all mail; (8) an injunction against anyone interfering with the Receiver's actions; and (9) a writ of seizure and execution to issue to any appropriate law enforcement officer to seize all books and records of Relators and the Lentinos. The order made no mention of the trust entities which the Receiver had also asked to administer.

The second order, an Order to Seize, authorized Constable Jack Abercia, or any other deputy constable or other law enforcement officer with authority and jurisdiction, to take control of three offices of the Lentinos. Two of the offices were in the name of Lentino Surgical Associates, and one was located at York Plaza Hospital & Medical Center. The order authorized the constable to use such force as reasonably necessary, including breaking locks and forcible entry, to search for, seize, and impound all non-exempt assets of Relators and the Lentinos, and turn them over to the Receiver. The order further authorized the Receiver, once in control of the premises of the offices, to change locks, secure all assets, and demand that any person leave the premises of the facility. In addition, the trial court ordered the constable to serve a subpoena for books, records, and bank statements of Relators and the Lentinos on several individuals, accountants, and Citizens National Bank, who were to turn the documents over to the Receiver.

### THE RECEIVER'S ACTIONS

On Friday, May 27, 1994, the Receiver undertook to carry out the orders of the trial court. He entered and secured the premises of the Lentino Surgical Associates, and removed business records and transported them to York Plaza Hospital & Medical Center, where he had also secured the premises and obtained a guarded office in which to store all the records. When Jorge Lentino attempted to interfere with the actions of the Receiver, the constable detained him in a police vehicle. In addition, the Receiver froze all the bank accounts of Relators and the Lentinos, but instructed the banks to honor payroll checks and checks written that day for supplies and services. He informed the Administrator of York Plaza Hospital that he was in control of the hospital and as of May 27th he would be the only authorized signatory on hospital checks. Finally, he took control of all mail delivered to the hospital and the other offices.

## THE PETITION FOR MANDAMUS

Relators filed an emergency Motion for Leave to File a Petition for Writ of Mandamus on Sunday, May 29, 1994, asking this Court to: (1) order the Honorable David West, Judge of Court 269th, Harris County, Texas, to vacate his Order to Seize and the Interim Order Authorizing Further Action by Court's Receivership to Enforce Court's Previous Orders signed May 26, 1994; (2) order the Receiver to immediately undo all acts he has undertaken in his capacity as receiver as a result of the May 26, 1994, Order and to return all of Relators' property to Relators; and (3) order Constable Jack Abercia to cease all acts taken in enforcement of the Orders.

This Court granted leave to file the petition for mandamus,[4] temporarily stayed the orders,[5] and ordered that: (1) no further action be taken by the Receiver with regard to the various properties and assets belonging to the Relators; (2) none of the assets involved in any way be transferred, removed, or otherwise alienated from the premises by *any individual or entity*, including Relators, the Receiver, parties to the original suit or appeal, except employees or physicians would be granted access to the necessary medical records to carry out any patient treatment required; and (3) employees or physicians be allowed access to any exempt personal property belonging to them, but no assets or records of the Relators, or parties to the suit or appeal would be removed from the premises.

## THE STANDARD OF REVIEW

■ In this mandamus proceeding, we must determine whether the Relators have an adequate remedy by appeal, and whether Judge West abused his discretion by entering the two orders authorizing the Receiver to take the actions he did. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992); *IMC Fertilizer, Inc. v. O'Neill*, 846 S.W.2d 590, 591 (Tex.App.—Houston [14th Dist.] 1993, orig. proceeding). Mandamus will not issue when there is a clear and adequate remedy by a normal appeal, because mandamus is intended to be an extraordinary remedy, available only in limited circumstances. *Walker*, 827 S.W.2d at 840. The writ will issue only in situations involving manifest and urgent necessity. *Id.* (quoting *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989)).

■ A trial court clearly abuses its discretion if it reaches a decision "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). In other words, an abuse of discretion occurs if a trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The resolution of factual matters is committed to the sound discretion of the trial court, and we may not substitute our judgment for that of the trial court. *Walker*, 827 S.W.2d at 839. On the other hand, appellate review of a trial court's determination of what the law is, or its application of the law to the facts, is much less deferential. *Id.* at 840. Because a trial court has no discretion in the matter, a failure of the trial court to properly analyze the law or apply it to the facts will constitute an abuse of discretion. *Id.; IMC Fertilizer*, 846 S.W.2d at 591.

## ANALYSIS

■ We first find that the case before us constitutes a situation in which mandamus will lie. The Receiver has secured business records, frozen bank accounts and postal boxes, and taken over operations of Relators, and he is exempt from liability for any results of his actions by order of Judge West. Moreover, the Receiver is authorized to dispose of Relators' assets. If Relators' complaints regarding the actions of the Receiver are not addressed until the appeal is final, the Receiver may have already disposed of all Relators' assets, thus endangering the rights of Relators. This is not a situation where Relators contend the appellate remedy is inadequate merely because of delay or

---

4. Tex.Gov't Code Ann. § 22.221.

5. Tex.R.App.P. 121.

increased expense. *Cf. Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304 (Tex. 1994). Relators have no adequate remedy by appeal, and mandamus is the appropriate vehicle by which they may attack the actions of the trial court.

We must next determine whether Judge West abused his discretion by entering the May 26, 1994 orders. Relators contend Judge West abused his discretion by entering the orders *ex parte,* without notice and a hearing. Further, they argue that they are not judgment debtors, and the trial court has no authority to order that their assets be turned over to the Receiver in the absence of a showing of ownership by the Lentinos, the true judgment debtors. In reply, Respondent asserts that no notice is necessary for actions taken pursuant to a turnover order. Further, he argues that it has been established that Relators are owned by the judgment debtors, and are non-exempt assets over which the Receiver has control by virtue of the turnover order. Because of the Receiver's control over the assets, he contends that Relators have no standing to assert their claim for mandamus.

■ Turnover orders are governed by Section 31.002 of the Texas Civil Practice and Remedies Code. Section 31.002 affords a judgment creditor aid from a court of appropriate jurisdiction to obtain satisfaction of a judgment if the judgment debtor owns property that cannot readily be attached or levied on by ordinary legal process, and is not exempt from attachment, execution or seizure. TEX.CIV.PRAC. & REM.CODE ANN. § 31.-002(a) (Vernon 1986). Section 31.002 does not provide for notice to be afforded a judgment debtor in a turnover proceeding. *Ross v. 3D Tower Ltd.,* 824 S.W.2d 270, 272 (Tex. App.—Houston [14th Dist.] 1992, writ denied). A "turnover proceeding" includes orders which the trial court enters to enforce an order that has been refused or disobeyed. *See* Section 31.002(c). Therefore, we hold that the Lentinos or Relators did not have the right to notice or a hearing regarding the attempt of the Receiver to effect enforcement of the turnover order.

■ Next, Relators assert that they are not judgment debtors, and that no finding has been made by the trial court that they are alter egos of the Lentinos. They vigorously assert that the Real Party in Interest dropped them from the suit as individual defendants prior to trial, and that fact should absolve them of any liability for payment of the judgment against the Lentinos, the true judgment debtors. On the other hand, Respondent asserts just as vigorously that testimony at trial, contained within the statement of facts before this Court in the underlying appeal, establishes that Relators are all directly or indirectly owned by the Lentinos. He argues that because the jury found that a "remainder interest in shares of stock" in Relators was fraudulently transferred to the Lentinos' Living Trusts, this indicates that the Lentinos are owners of Relators. We must disagree.

There was no special issue submitted to the jury which answered the question of the ownership of Relators. Although the jury found that stock had been fraudulently transferred, there was no finding of the percentage ownership in Relators represented by the transferred stock. Likewise, in the trial court's judgment, which incorporates the jury's answers to special issues, no factual finding is made as to the ownership of Relators, and no factual finding is made as to the percentage ownership by the Lentinos of Relators, as represented by the fraudulently transferred stock. The Receiver has represented to this Court through an affidavit that he examined the business records of the Lentinos and determined that they owned 100% of the stock in Relators. On the other hand, Relators assert in this Court through a verified pleading that ownership of the stock is in the Lentino Limited Family Partnership. This Court is not a fact-finder, and we may not decide factual disputes.

■ Without a factual finding *by the trial court* that the Lentinos, the true judgment debtors, are owners of at least a controlling majority of the stock in Relators, we are left with an order that, on its face, authorizes seizure and execution on assets of non-judgment debtors. The turnover statute does not support a proceeding against an entity who is not a judgment debtor, until a judgment

creditor succeeds in piercing the corporate veil, *United Bank Metro v. Plains Overseas Group, Inc.,* 670 S.W.2d 281, 284 (Tex.App.—Houston [1st Dist.] 1983, no writ), or unless the trial court makes a factual finding that the property on which execution is sought is subject to the possession or control of the judgment debtor, even if retained by a third party. *Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.,* 703 S.W.2d 345, 349 (Tex.App.—San Antonio 1985, no writ).

We find that the trial court abused its discretion in ordering seizure of the businesses of Relators without establishing on the record the ownership interest of the judgment debtors. If there was a factual dispute as to the ownership of the Relators, the trial court needed to hold an evidentiary hearing prior to entering its orders, to establish the ownership of Relators by the Lentinos, or the trial court needed to incorporate such a factual finding into its judgment or subsequent enforcement orders. Many of the mandates contained in the orders are drastic remedies, including allowing the Receiver to open mail, become the sole signatory on business checks, and freeze bank accounts. We are not saying that the trial court could not enter such drastic orders *if it had made the proper factual findings.* However, without any evidence or findings that the judgment debtors own at least a controlling interest in Relators, we must conditionally grant the writ of mandamus. We emphasize that this finding in no way implies error by the trial court in entering the turnover order or appointing a receiver. The error by the court occurred in its *enforcement* of the turnover order and receivership by inappropriate means, in light of the lack of evidence to support the orders. *See* Section 31.002(c).

■ Finally, Respondent contends that Relators have no standing to assert their claim for mandamus, because the Receiver is in control of the Lentinos' assets, including controlling interests in Relators, by virtue of his receipt of assets pursuant to the turnover order. However, we find the standing issue is also tied to the failure of the trial court to find that the Lentinos owned at least a controlling interest in Relators. It may be that if the Receiver became the possessor of stock constituting a controlling interest in Relators, he alone is authorized to take action on behalf of the Relators' interests. *See generally* Tex.Rev.Civ.Stat.Ann. art. 6132a–1 (Vernon Supp.1994) (the Texas Revised Limited Partnership Act). However, because we have no factual determination regarding the percentage ownership of the stock in Relators, we must deny relief based on the assertion that the Relators lack standing to file the petition for writ of mandamus.

Therefore, we conditionally grant the writ of mandamus and direct the Honorable David West, Judge of the 269th District Court of Harris County, Texas to vacate his Order to Seize, and the Interim Order Authorizing Further Action by Court's Receivership to Enforce Court's Previous Orders, signed May 26, 1994. We assume that Respondent will comply with the directions contained in the opinion, and mandamus will issue only if he fails to comply.