COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
RICHARD ROSS,                                               )                  No. 08-04-00001-CV
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  County Court at Law No. 7
)
NATIONAL CENTER FOR EMPLOYMENT  )                  of El Paso County, Texas
OF THE DISABLED,                                         )
                                                                             ) (TC# 99-1459)
                                    Appellee.                          )

O P I N I O N
Richard Ross appeals a turnover order which requires the surrender of a letter of credit and
its proceeds in partial payment of an outstanding judgment. At issue is the authority of the
Honorable Jose Baca to order the turnover of a corporate asset owned by two business entities of
which Ross is the sole shareholder. Finding no abuse of discretion, we affirm.
FACTUAL SUMMARY
            In 1998, litigation ensued in federal district court in Arizona between Tamarack Capital LLC
and Tamarack Insurance LLC (Tamarack), Richard Ross individually, and Access Healthsource, Inc.
(Access). Judgment was awarded in favor of Tamarack and Access appealed. It pledged a letter of
credit for $1.2 million to secure the judgment pending appeal. During oral argument, the parties
advised us that the judgment has been affirmed by the Ninth Circuit Court of Appeals.
            On April 26, 1999, Access’s shareholders sued Ross and other defendants in Texas for
common law and statutory fraud. On January 21, 2000, the shareholders took a default judgment
against Ross in the amount of $5 million in actual damages, $5 million in exemplary damages, and
attorney’s fees. After their claims against the other defendants were severed, the shareholders
attempted to enforce the judgment against Ross in Arizona. The Arizona Superior Court found the
Texas judgment void for insufficient service of process and entered an order vacating it. 
            On October 27, 2000, the shareholders re-filed their claims against Ross in Texas in cause
number 2000-764. He responded to the allegations, and at the time of briefing in this court, that case
remains pending in the trial court. Eight of the shareholders have since assigned their interests in
the judgment to Access. 
            In December 2002, Access filed a motion for turnover relief requesting that Ross surrender
his interest in Tamarack. The trial court granted the motion on January 15, 2003, specifically finding
that the January 2000 default judgment was final and fully enforceable. It ordered Ross to surrender
the stock of the Tamarack entities to the El Paso Sheriff’s Department in execution of the judgment. 
Ross appealed, arguing that the default judgment was void for improper service of process, that the
Arizona order vacating the judgment was entitled to full faith and credit, and that consequently, the
default judgment was a nullity that could not be enforced.


 Finding the judgment to be voidable
rather than void, we concluded that the validity of service could not be challenged in a
collateral attack. See Ross v. Access Healthsource Inc., No. 08-03-00079-CV, 2003 WL 22870451
(Tex.App.--El Paso Dec. 4, 2003, pet. denied)(not designated for publication). Because
jurisdictional recitations in a judgment that is regular on its face are accorded absolute verity and can
only be directly attacked, we affirmed the turnover order. We rejected Ross’s contention that the
Arizona state court order vacating the foreign judgment in Arizona had the effect of voiding the
Texas default judgment for purposes of enforcement in Texas. Despite our ruling, Ross has not
complied with the turnover order. 
            Eleven days after our opinion issued, Access filed a second motion for turnover relief
claiming Ross was the owner of Tamarack and that as a result, he controlled the $1.2 million letter
of credit which Access had pledged to secure the Arizona federal court judgment. Access argued
that the proceeds of the letter could not be readily attached through ordinary legal process and that
the proceeds were not exempt from attachment, execution, or other seizure. It requested that the
court order Ross and Tamarack to turn over the letter of credit and order Chase Bank to turn over
the proceeds if Ross or Tamarack demanded payment. The Tamarack entities were not joined as
parties, nor has it been alleged that these limited liability companies are the alter ego of Ross. 
            Ross did not appear for the hearing. The trial court found once again that Access had a final,
fully enforceable judgment against Ross, that the judgment had not been paid, and that Ross’s
actions indicated an intent to avoid payment. The court also found that Ross was the sole owner of
Tamarack and that Tamarack had possession and control of the letter of credit and its proceeds. It
ordered Ross and Tamarack to turn over the letter of credit and ordered Chase Bank to turn over the
proceeds from the letter if payment were demanded. On July 8, 2004, Chase tendered the proceeds
of the letter of credit into the registry of the court. On that same day, Access assigned its interest in
the judgment to the National Center for Employment of the Disabled, which now appears before us
as Appellee. 
 

TURNOVER RELIEF
            In three issues for review, Ross challenges the propriety of the turnover order. In Point of
Error One, he complains that the order was entered against non-parties who were also non-judgment
debtors. In Point of Error Two, he argues that because the letter of credit was not property owned
by him it was not subject to the turnover order. Finally, in Point of Error Three, Ross alleges that
Appellee failed to prove that Ross’s property interest could not be readily attached by ordinary legal
process. Standard of Review
            A trial court’s decision to issue a turnover order is reviewed for an abuse of discretion.
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). We may reverse if we determine
that the court acted in an unreasonable or arbitrary manner, or without reference to any guiding rules
or principles. Id. Whether there is evidence to support the turnover award is a relevant
consideration. Id. A clear failure by a trial court to analyze or apply the law correctly constitutes
an abuse of discretion. McDaniel v. Yarbrough, 898 S.W.2d 251, 253 (Tex. 1995); Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992). 
Turnover Relief on Default Judgment
            Appellee sought turnover relief pursuant to Section 31.002 of the Texas Civil Practice and
Remedies Code. Subsection 31.002(a) provides: 
(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction
through injunction or other means in order to reach property to obtain satisfaction on
the judgment if the judgment debtor owns property, including present or future rights
to property, that: 
 
(1) cannot readily be attached or levied on by ordinary legal process; and 
 
(2) is not exempt from attachment, execution, or seizure for the
satisfaction of liabilities. 

Tex.Civ.Prac.&Rem.Code Ann. § 31.002(a)(Vernon Supp. 2004-05). The turnover statute applies
to property that is in the judgment debtor’s possession or subject to his control. 
Tex.Civ.Prac.&Rem.Code Ann. § 31.002(b)(1). Once assets are traced to the judgment debtor,
a presumption arises that those assets are in his possession, and the burden then shifts to him to
account for the assets. Buller, 806 S.W.2d at 226.
Non-Judgment Debtors
            The crux of Ross’s argument is that a turnover order may not issue against Tamarack without
the initiation of separate proceedings against the entities. The reality is that the Tamarack entities
are limited liabilty companies organized under Arizona law. Attempting to sue them in Arizona is
pointless inasmuch as the Arizona courts have determined that the Texas judgment which Appellee
is attempting to enforce is void. If enforcement is to be had, it is to be had here. Yet this reality
dawns with the recognition that we must not paint with too broad a brush since bad facts tend to
make bad law.
            We begin our analysis with Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223 (Tex. 1991). 
Mrs. Buller, as the personal representative of her deceased husband’s estate, authorized transfers of
estate funds to persons having no legitimate claim against the estate. These transfers included the
proceeds of a $100,000 certificate of deposit. In a turnover proceeding, the trial court ordered her
to provide receipts of the disbursements of the $100,000. The evidence was indisputable that the
proceeds from the original CD, which was estate property, were traced to Mrs. Buller. Since Mrs.
Buller held estate property, she became a holder of property of a judgment debtor--the estate. Once
these assets were traced to her in her representative capacity, a presumption arose that those assets
were in her possession. The burden then shifted to her to account for the assets. The Supreme Court
explained that the purpose of the turnover proceeding is merely to ascertain whether or not an asset
is in the possession of the judgment debtor or subject to the debtor’s control. It emphasized the
general principle that “Texas courts do not apply the turnover statute to non-judgment debtors.” 
Because the turnover statute could only reach Mrs. Buller in her capacity as representative of the
estate, the trial court erred in imposing liability in her individual capacity. 
            Later that same year, the Supreme Court again considered a turnover order in Schultz v. Fifth
Judicial Dist. Court of Appeals at Dallas, 810 S.W.2d 738 (Tex. 1991)(orig. proceeding). As Ross
candidly acknowledges, the basic rule was expanded:
The statute requires a factual showing that the judgment debtor has non-exempt
property that is not readily subject to ordinary execution. It may be against one or
more parties other than the judgment debtor. Upon proof of the necessary facts, it
authorizes the trial court to order affirmative action by the judgment debtor and
others to assist the judgment creditor in subjecting such non-exempt property to
satisfaction of the underlying judgment. Such an order acts as a mandatory
injunction against the judgment debtor and, if there are such parties, against the
receiver and any third parties interested in the property rights being adjudicated. 
[Emphasis added].

Id. at 740. The exception must be limited in its breadth and applied judiciously. As both parties
concede, the intermediate courts have taken divergent approaches to its application. Inasmuch as
our review requires us to determine whether the trial court abused its discretion in entering the order, 
we shall look to the jurisprudence which supports the ruling. If supporting authority is applicable
to the instant facts, we would be hard pressed to conclude that an abuse of discretion has occurred.
            We first find guidance in Dale v. Finance America Corp., 929 S.W.2d 495 (Tex.App.--Fort
Worth 1996, writ denied). The Dales were ordered to turn over fifteen items of property, including
country club memberships, assets held by a Texas corporation, assets held in trust for the Dales,
stock in various corporations, and all other non-exempt property. On appeal, the Dales alleged that
only property owned by the judgment debtor may be subject to a turnover order since, as a general
rule, Texas courts do not apply the turnover statute to non-judgment debtors. 
            While not disagreeing with this basic principle, the court of appeals recognized a limited
exception and concluded that in certain circumstances, a turnover order may be issued against parties
other than the judgment debtor. Dale, 929 S.W.2d at 498, citing Int’l Paper Co. v. Garza, 872
S.W.2d 18, 19 (Tex.App.--Corpus Christi 1994, no writ). In circumstances where a third party
retains property, “if it is shown to be non-exempt, owned by a judgment debtor and subject to the
debtor’s possession or control, the trial court may issue and enforce its turnover order [against that
third party].” Dale, 929 S.W.2d at 498. Once the judgment creditor traces the assets to the judgment
debtor, a presumption arises that those assets were in his possession and the burden then shifts to the
judgment debtor to account for the assets. Dale, 929 S.W.2d at 498, citing Buller, 806 S.W.2d at
226. The record from the hearing established that the judgment creditors were able to trace the assets
listed in the turnover order back to Richard Dale and to demonstrate that the items were subject to
his control, including those currently held by third parties. Because the Dales offered no evidence
at the hearing, they were unable to rebut the presumption that Richard Dale possessed the turnover
items once the judgment creditors traced the assets to him. 
            More factually analogous is Plaza Court, Ltd. v. West, 879 S.W.2d 271 (Tex.App.--Houston
[14th Dist.] 1994, orig. proceeding). There, Cullen Bank obtained a judgment for over $8.6 million
against the Lentinos. When Cullen Bank attempted to conduct post-judgment discovery and execute
upon the judgment, the Lentinos refused to provide any post-judgment discovery, refused to appear
for depositions, and refused to pay the judgment. The trial court entered a turnover order and the
property relevant to the controversy was stock owned by each of the Lentinos. When the Lentinos
failed to comply, the trial court entered additional orders by which a receiver secured business
records, bank accounts, and postal boxes, and took control of the Lentinos various business
operations. In a mandamus proceeding, the Lentinos argued that the business entities were not
judgment debtors and the trial court had no authority to order the business assets turned over to a
receiver in the absence of a showing of ownership by the true judgment debtors. The receiver argued
that testimony at trial, contained within the record of a companion appeal, established that the third
parties were all directly or indirectly owned by the Lentinos. He contended that because the jury
found that a “remainder interest in shares of stock” was fraudulently transferred to the Lentinos’
Living Trusts, the Lentinos owned the businesses. 
            The appellate court disagreed. There was no question submitted to the jury which addressed
ownership. Although the jury found that stock had been fraudulently transferred, there was no
finding of the percentage ownership in the entities represented by the transferred stock. Nor was
there a fact finding in the trial court’s judgment as to ownership. Although the receiver represented
by affidavit that he examined the business records and determined that the Lentinos owned 100%
of the stock, the entities alleged that the Lentino Limited Family Partnership owned the stock. The
appellate court held that without a fact finding by the trial court that the Lentinos were owners of at
least a controlling majority of the stock, the turnover order improperly authorized execution on assets
of non-judgment debtors. “The turnover statute does not support a proceeding against an entity who
is not a judgment debtor, until a judgment creditor succeeds in piercing the corporate veil, or unless
the trial court makes a factual finding that the property on which execution is sought is subject to the
possession or control of the judgment debtor, even if retained by a third party.” Plaza, 879 S.W.2d
at 276-277 (internal citations deleted). 
Ownership and Control
            At this juncture, we must determine whether the trial court properly concluded that the letter
of credit was within Ross’s possession and control. In Point of Error Two, Ross complains that there
is no evidence that Ross owned any property right. The trial court specifically found:
The Court further finds that Defendant Richard Ross is the sole owner of Tamarack
Capital, L.L.C. and Tamarack Insurance, L.L.C., (The ‘Tamarack Entities’) and that
Tamarack Capital, L.L.C. and Tamarack Insurance, L.L.C., have a present right to
possess and/or control Letter of Credit number D-230001 issued by JP MorganChase
Bank and naming Tamarack Capital, L.L.C. and Tamarack Insurance, L.L.C. as
beneficiaries, and that the Tamarack Entities have a future right to receive the
proceeds of said Letter of Credit upon presentment to JP Morgan Chase Bank under
its terms. 

This finding stems from the following debate:
 
Counsel for Ross:And there’s no evidence that Mr. Ross owns this letter of
credit, you know, if this letter of credit is properly [sic] under
the [turnover] statute.
 
The Court: But he owns this company.
 
Counsel for Ross: He owns the company.
 
The Court: And that’s what -- in that case --
 
Counsel for Access: Your Honor, the cases are consistent. The general rule is you
can’t do a turnover against a third party non debtor unless you
put into evidence that the judgment debtor is in control of the
property. 
 
And Mr. Ross -- although either under sanctions and
contempt -- has not bothered to come and provide us evidence
about it, just deposition testimony of -- about his assets. Yet
he wants to hide behind that and say that nothing is going on
here is really troubling.
We’re trying to preserve the status quo. And what -- and
what the evidence here is, from the transcript, from Mr.
Ross’s own mouth, is that he’s the owner of both of these
entities. There is also a turnover order by this Court
specifically naming both of these entities and requiring Mr.
Ross to turn over his stock.
 
The Court: I think that’s -- I think that’s a defining point for me, the fact
that I had ordered him to turn over the stock.
 
Counsel for Access: And he’s not done it. And we --
 
The Court: And he hasn’t done it.
 
Counsel for Access: -- wouldn’t even be here because we would own the stock
now and it would not be --
 
The Court: And you could go and exercise the letter of credit.
 
Counsel for Access: And then the letter of credit would come to the entities which
we own rather than getting into Mr. Ross’s hands. Because
the control issue right now is in his hands. He controls these
entities, so he controls the money. [Emphasis added].

It is clear from the reporter’s record that Judge Baca had before him two seasoned lawyers, excellent
arguments, and the applicable case law. For him, the turning point was the shifting burden. “If he
had gotten rid of the stock . . . [a]nd told us so, that he didn’t own it . . . otherwise I think the burden
is on him to say that he doesn’t own it. . . . And that could be done simply with an affidavit.” 
            Applying Dale to these facts, we find no abuse of discretion in Judge Baca’s conclusion. 
Once the judgment creditor traces the assets to the judgment debtor, a presumption arises that those
assets were in his possession and the burden then shifts to the judgment debtor to account for the
assets. Dale, 929 S.W.2d at 498, citing Buller, 806 S.W.2d at 226. Applying Plaza, this
presumption applies to assets held by a corporate entity as long as the trial court finds that the true
judgment debtor owned at least a controlling majority of the stock. Such a finding justifies the
issuance of a turnover order against assets of non-judgment debtor. Plaza, 879 S.W.2d at 276-77. 
            Ross was the sole owner of the stock in two companies who had sole control of the letter of
credit. Given the applicable authorities, the evidence, the failure of Ross to rebut the presumptions,
and the trial court’s specific findings, we find no abuse of discretion. Points of Error One and Two
are overruled.
Property Cannot Be Readily Attached By Ordinary Legal Process
            Finally in Point of Error Three, Ross complains that Appellee failed to show that the property
in question is not readily subject to execution. A copy of the letter of credit was introduced into
evidence, without objection, indicating that Tamarack was the beneficiary. Ross’s attorney advised
the court that “the original letter of credit is held in the safe of Tamarack’s attorney in Arizona and
not here in Texas.” Evidence that corporate assets are in the hands of third parties and being held
out of state is sufficient to meet this requirement. Childre v. Great Souwest Life Ins. Co., 700
S.W.2d 284, 288 (Tex.App.--Dallas 1985, no writ). Efforts to obtain the stock certificates through
a turnover order had previously failed. Efforts to depose Ross had failed. Efforts to enforce the
judgment in Arizona had failed. Contempt orders and sanctions proved equally unsuccessful. We
find no abuse of discretion in the trial court’s conclusion that the letter of credit could not be secured
by ordinary legal process. Point of Error Three is overruled. Having overruled each issue for
review, we affirm the judgment below.

May 26, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.