COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MICHAEL J. DIXSON, PDG, INC. and PDG PRESTIGE, INC., | § | No. 08-23-00144-CV |
| | § | Appeal from The |
| Appellants, | | |
| | § | County Court at Law No. 6 |
| v. | | |
| | § | of El Paso County, Texas |
| DENNIS CRIMMINS, WHITE SANDS CONSTRUCTION, INC., CRIMMINS FAMILY LIMITED PARTNERSHIP, and MDDC INVESTMENTS, LLC, | § | (TC#2020 - DCV-3461) |
| | | |
| Appellees. | | |

## MEMORANDUM OPINION

By way of restricted appeal, Appellants challenge certain turnover order provisions, arguing that their overbreadth improperly impacts the rights of third parties or compels the disclosure of privileged materials. We lack jurisdiction over most of the provisions either because they are not themselves final, appealable orders or because Appellants do not have standing to assert challenges on behalf of third parties. Considering the remaining provision on the merits, we find no error and affirm.

# I. BACKGROUND

## A. Turnover Order entered against Michael Dixson.

In August 2019, a Dona Ana County, New Mexico court entered a Stipulated Judgment (Judgment) against PDG, Inc. (PDG) and Michael Dixson (Dixson), awarding Dennis Crimmins, White Sands Construction, Inc., the Crimmins Family Limited Partnership, and MDDC Investments, LLC (collectively, the Crimmins Parties) $1,450,000.00, with interest accruing annually.[1] Prior to entry of the Judgment, Dixson paid $150,000 towards the obligation. No additional payments were made.

In October 2020, the Crimmins Parties filed an authenticated copy of the Judgment in the County Court at Law No. 6, El Paso County, Texas, in a case styled, "[the Crimmins Parties] vs. Michael J. Dixson, PDG., Inc.[2] and PDG Prestige, Inc."[3] Almost two years later, in September 2022, the Crimmins Parties applied for a post-judgment turnover Order, the appointment of a receiver and injunctive relief (Application). Although styled, "[the Crimmins Parties] v. Michael J. Dixson, PDG, Inc., and JFAL Holding Company, LLC," the Application sought relief against Dixson only.

The Application was set for hearing on October 26, 2022. The next day, finding the Crimmins Parties were entitled to recover from Dixson any amounts unsatisfied under the

---

[1] The Judgment was also entered against JFAL Holding Company, LLC, which is not a party to this appeal.

[2] It is unclear why PDG was named as a defendant when the New Mexico Judgment was filed in El Paso County. PDG was not a party to the New Mexico Judgment.

[3] The Texas Uniform Enforcement of Foreign Judgments Act (UEFJA) authorizes a party, with appropriate notice, to file an authenticated copy of a foreign [United States] judgment in a Texas court, thereby giving full force and effect to the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 35.001–.008; U.S. Const. Art. IV, §1. An authenticated foreign judgment filed pursuant to the UEFJA is treated "in the same manner as a judgment of the court in which the foreign judgment is filed . . ." *See* Tex. Civ. Prac. & Rem. Code Ann. § 35.003(b). Once filed, the judgment is subject to the same procedures, defenses, and proceedings for . . . satisfying a domestic judgment. *See id.* § 35.003(c).

Judgment, the trial court granted the Application and appointed a receiver to take possession and control of Dixson's nonexempt assets (the Order). The Order's findings and instructions address Dixson only.[4] Compelling Dixson to turnover particular items and information to the Receiver, the Order also provides that Dixson's non-compliance is punishable by sanctions or incarceration.

## II. ISSUES ON APPEAL

As a preliminary matter, Appellants Dixson, PDG, and PDG Prestige, Inc. (Appellants) contend they have properly invoked this Court's jurisdiction by meeting the requirements for a Restricted Appeal. On the merits, Appellants argue that the trial court's error is apparent on the face of the Order because the overbreadth of certain provisions improperly affects the rights of third parties or compels the disclosure of materials expressly protected by the attorney-client and attorney work product privileges.

## III. DISCUSSION

### A. Turnover Orders in general.

Generally, every court with jurisdiction to render a judgment also has the inherent authority to enforce its judgments. *In re Estate of Renz*, 662 S.W.3d 531, 536 (Tex. App.—El Paso 2022, pet. denied) (citing *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chemical Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam), *superseded by statute on other grounds as stated in Vaccaro v. Raymond James & Assoc., Inc.*, 655 S.W.3d 485, 489, n. 3 (Tex. App.—Fort Worth 2022, no pet.)).[5] And particularly applicable here, the filing by a judgment creditor of

---

[4] The final paragraph of the Order, noting the Receiver's sale of the personal property of "Francisco Javier Bowler[]," apparently contains a typographical error.

[5] Confirming that § 31.002(a) of the Texas Civil Practice & Remedies Code was amended in 2017 to remove the requirement that, prior to the entry of a turnover Order, a judgment creditor must prove the judgment debtor's property cannot be readily attached or levied by ordinary legal process. *Vaccaro v. Raymond James & Assoc., Inc.*, 655 S.W.3d 485, 489, n. 3 (Tex. App.—Fort Worth 2022, no pet.); *see also Hamilton Metals, Inc. v. Global Metal Services, Ltd.*, 597 S.W.3d 870, 878 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

3

an authenticated copy of a foreign judgment, pursuant to the UEFJA, presents a *prima facie* case for its enforcement. *See Walnut Leasing Co., Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996).

When a judgment remains unpaid, § 31.002 of the Texas Civil Practice and Remedies Code (the turnover statute) authorizes a judgment creditor, with the court's assistance, to reach the nonexempt assets of a judgment debtor to satisfy the judgment through injunction or other means.[6] *Vaccaro*, 655 S.W.3d at 488–89 (citing Tex. Civ. Prac. & Rem. Code § 31.002(a)). The judgment creditor must first demonstrate that an underlying judgment exists, the underlying judgment remains unpaid, and the judgment debtor owns nonexempt property. *Vaccaro*, 655 S.W.3d at 489. Once the judgment creditor discharges its burden, the judgment debtor must show that the identified property is either not owned or exempt from attachment. *Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 836 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Restrepo v. Alliance Riggers & Constructors, Ltd.*, 538 S.W.3d 755, 758 (Tex. App.—El Paso 2017, no pet.).

Based on "some substantive, probative evidence," a court may order the judgment debtor to turnover to a designated official (or "receiver") that nonexempt property which is in the judgment debtor's possession or subject to his control. *See* Tex. Civ. Prac. & Rem. Code § 31.002(b)(1); *Vaccaro*, 655 S.E.3d at 489 (citing *Robison v. Watson*, No. 04-20-00138-CV, 2021 WL 2117936, at *6 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.)). The court may then instruct the receiver to take possession of the nonexempt property, make the arrangements for its sale, and pay the proceeds to the judgment creditor as necessary to satisfy the judgment. *Robison*, 2021 WL 2117936, at *2 (citing Tex. Civ. Prac. & Rem. Code § 31.002(b)(3)).

---

[6] A nonexempt asset refers to property that is (1) in the debtor's possession or is subject to the debtor's control; and (2) "not exempt from satisfaction, execution, or seizure for the satisfaction of liabilities." *See* Tex. Civ. Prac. & Rem. Code § 31.002(b)(1), (a).

**B. Did appellants perfect a restricted appeal?**

Before addressing the merits of Appellants' arguments, we must first discharge our duty to ensure our own jurisdiction over this attempted restricted appeal. *See Dickson v. American General Life Ins. Co.*, 698 S.W.3d 234, 235 (Tex. 2024). Courts "may not assume jurisdiction for the purpose of deciding the merits of the case." *Id.* (citing *Sinochem International Co. v. Malaysian International Shipping Corp.*, 549 U.S. 422, 431 (2007)); *see also Texas Medicine Resources, LLP v. Molina Healthcare of Texas*, 659 S.W.3d 424, 440 (Tex. 2023) (noting "[t]he integrity of that line [between subject-matter and merits jurisdiction] is fundamental to the working of the civil justice system because a court without subject-matter jurisdiction cannot decide the case at all"); *In re Estate of Romo*, 469 S.W.3d 260, 262 (Tex. App.—El Paso 2015, no pet.) (confirming appellate court has no power to address merits of appeal without first considering its own jurisdiction). Whether we have jurisdiction is a legal question, which we review de novo. *Bonsmara Natural Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020).

**(1) Jurisdictional requirements under appellate Rule 30.**

Rules 26.1(c) and 30 of the Texas Rules of Appellate Procedure govern restricted appeals. *See* Tex. R. App. P. 26.1(c), 30. To prevail, Appellants must show: (1) the filing of a notice of appeal within six months of the date the judgment was signed; (2) Appellants were parties to the underlying lawsuit; (3) Appellants did not participate in the hearing that resulted in the challenged judgment and did not file any timely post-judgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Turbo Restaurants, Inc. v. Reid's Refrigeration, Inc.*, 657 S.W.3d 490, 495 (Tex. App.—El Paso 2022, no pet.) (citing *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 Tex. 2004)). The first three elements are

jurisdictional; the fourth is not because it "ultimately requires an analysis of the merits of the appellant's grounds for appeal."[7] *Ex parte E.H.*, 602 S.W.3d 486, 496–97 (Tex. 2020).

Appellants filed their Notice of Restricted Appeal (Notice) on April 28, 2023, one day after the requisite timeline expired. *See* Tex. R. App. P. 26.1(c). Appellants then timely moved for an extension of time, which this Court granted after finding Appellants' explanation for the delay to be reasonable. *See* Tex. R. App. P. 26.3(b), 10.5(b); *Meshwert v. Meshwert*, 549 S.W.2d 383, 383–94 (Tex. 1977) (confirming a reasonable explanation for an untimely appeal means "any plausible statement of circumstances indicating that [the] failure to file within the [applicable timeline] was not deliberate or intentional, but was the result of inadvertence, mistake or mischance"). The Notice confirmed that neither Appellants nor their counsel participated in the October 2022 hearing which culminated in the Order. The Notice also verified that Appellants did not file any motions or requests for findings after the Order was entered. Thus, at least under Rule 30, Appellants have satisfied the jurisdictional requirements for a restricted appeal. *See* Tex. R. App. P. 30.

### (2) Do the remaining challenged provisions, standing alone, constitute final orders for appeal purposes?

The jurisdictional question remains unanswered, however. Unless authorized by statute, an appeal may be taken only from a final judgment. *Alexander DuBose*, 540 S.W.3d at 581 (citing *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985) (per curiam)). On that basis, we must consider each of the challenged Order provisions to determine if they constitute final orders, in and of themselves; if they do not, we lack jurisdiction and must dismiss the appeal. "The failure of a jurisdictional requirement deprives the court of the power to act, other than to determine that it has

---

[7] Courts are instructed to "avoid inquiring into the merits of an appeal when deciding whether the appellant 'procedurally invoked the court of appeals' jurisdiction.'" *Ex parte E.H.*, 602 S.W.3d 486, 497 (Tex. 2020) (citing *Sweed v. Nye*, 323 S.W.3d 873, 875 (Tex. 2010)). This is because a party is "entitled to [the] proper application of the appellate rules regardless of the merits of [the] underlying case." *Id.*

no jurisdiction, . . . as a matter of law." *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex. 2004), *superseded by statute on other grounds as recognized in Texas Disposal Systems Landfill, Inc. v. Travis Central Appraisal District by and through Crigler*, 694 S.W.3d 752, 759 n. 33 (Tex. 2024); *see also Aguilar v Esquivel*, No. 08-23-00250-CV, 2024 WL 3836895, at *1 (Tex. App.—El Paso August 15, 2024, no pet.) (mem. op.) (citing Tex. R. App. P. 42.3(a)) ("Because there is no final judgment in this case, we dismiss the appeal for want of jurisdiction.").

Generally, orders are deemed "final" for appellate purposes when they dispose of all remaining parties and claims before the court, or when they contain unequivocal language to that effect. *Sealy Emergency Room, LLC v. Free Standing Emergency Room Managers of America, LLC*, 685 S.W.3d 816, 820 (Tex. 2024) (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001), *superseded by statute on other grounds as stated in Industrial Specialists, LLC v. Blanchard Refining Company, LLC*, 652 S.W.3d 11, 14 (Tex. 2022)). While turnover Orders necessarily correspond to an underlying final judgment, they must themselves be final to successfully invoke appellate jurisdiction. *Alexander Dubose*, 540 S.W.3d at 582 (citing *Bahar v. Lyon Financial Services Inc.*, 330 S.W.3d 379, 386 (Tex. App.—Austin 2010, pet. denied)). "[W]hat qualifies as 'final' in the turnover context necessarily diverges from the more traditional concept of finality." *Id.* (citing *Bahar*, 330 S.W.3d at 385).

Where a turnover Order "acts as a mandatory injunction" against the judgment debtor, the Texas Supreme Court has held it constitutes a final order for purposes of appeal. *Id*. at 586 (citing *Schultz v. Fifth Judicial District Court of Appeals at Dallas*, 810 S.W.2d 738, 740 (Tex. 1991), *abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114, 124–25 (Tex. 2004)). A turnover Order functions as a mandatory injunction when it compels a judgment debtor to perform [or

7

refrain from performing] a specific act.[8] *Id.* at 587. When a turnover Order does *not* function as a mandatory injunction, appellate jurisdiction is not invoked. *Id*. at 587, n. 54 (citing *Black v. Shor*, 443 S.W.3d 170, 176 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.)). Significantly, *portions* of a turnover Order can be "injunctive in nature and, thus, final and appealable, while other provisions of the same order can be interlocutory and unreviewable because they do not resemble injunctive relief." *Id.* at 587 (citing *Prodeco Exploration, Inc. v. Ware*, 684 S.W.2d 199, 201 (Tex. App.—Houston [1st Dist.] 1984, no pet.)) (emphasis added).

Our examination of the challenged provisions does not take place in a vacuum; each must be read in the context of the Order's governing predicate language. For example, the Order grants relief as to Dixson only. *See WC 4th and Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-00073-CV, 2024 WL 1138568, at *8 (Tex. App.—El Paso March 15, 2024, no pet.) (mem. op.) (citing *Bay City Plastics, Inc. v. McEntire*, 106 S.W.3d 321, 325–26 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)) (confirming a trial court's findings in facilitation of turnover Order "*bind the judgment debtors only*, and not third parties that the turnover Order has not issued against") (emphasis added). The Order further contains express language indicating (1) the Receiver may take custody of certain nonexempt contested assets until such time as the court "determines the rights of those claiming an interest in [a particular] asset or whether an asset is exempt;" and (2) the trial court "may, from time to time, enter orders and protective orders necessary to do justice between the parties."

---

[8] Black's Law Dictionary defines an injunction as "[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury." Black's Law Dictionary (12th ed. 2024). The Merriam-Webster Dictionary defines "injunction" as "a writ granted by a court of equity whereby one is required to do or refrain from doing a specified act; the act or an instance of enjoining." *Injunction*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/injunction (last visited January 30, 2025).

### (a) Post-judgment orders regarding discovery disputes are not final, appealable judgments.

Appellants challenge certain provisions on the basis that their overbreadth compels the production of attorney-client or attorney work product materials. Claiming the Receiver's access to Dixson's mail—and especially, to Dixson's electronic mail—would implicate "large swaths of attorney-client communication[s]," Appellants first contest the following provision:[9]

> It is therefore Ordered that Receiver may: [r]e-direct, read and copy [Dixson's] mail, whether electronic, paper, or facsimile, or otherwise, and whether sent to a street address, telephone line, post office box, or via the internet, before and exclusive of receipt[;] and establish procedures for allowing [Dixson] to retrieve the mail, or copies[.]

Next, because billing records are among those protected by the attorney work-product privilege and thus, not subject to disclosure,[10] Appellants challenge the following provision in Exhibit A:

> [Each defendant is ordered to turn over to the Receiver:] All time and billing records, beginning ninety days before this order was signed, for attorneys who represented a defendant or entities that a defendant owns, manages, or controls[.]

Regarding the first provision specifically, the Order states the Receiver may "[t]ake custody of non-exempt *contested* assets *until the Court determines the rights of those claiming an interest in the asset or whether the asset is exempt*." (emphasis added) Thus, the Order affords Dixson the opportunity to assert any privilege objections before the trial court makes a determination.

---

[9] This provision is one of several the trial court indicates the Receiver *may* undertake. (emphasis added).

[10] Appellants cite *In re National Lloyds Ins. Co.*, 532 S.W.3d 794, 806 (Tex. 2017) for the proposition that billing records fall within the "zone of work-product protection."

Moreover, as applicable to both provisions, the trial court reserved the power to, "from time to time, enter orders and protective orders necessary to do justice between the parties." Where the trial court has expressly left the door open for the further resolution of contested issues, the challenged provisions fail to dispose of all remaining claims before the court, do not constitute final orders, and are not susceptible of appellate review. *See Sealy Emergency Room*, 685 S.W.3d at 820; *cf.*, *WC 4th*, 2024 WL 1138568, at *13 (citing *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)) (confirming turnover Order authorizing sale of property "subject to" resolution of ownership issues was "interlocutory and not appealable"); *see also Bahar*, 330 S.W.3d at 388 (confirming post-judgment orders pertaining to discovery disputes are not final, appealable judgments over which an appellate court has jurisdiction).

### (b) Appellants lack standing to challenge provisions based on third party concerns.

Appellants challenge additional provisions on the grounds that their overbreadth improperly impacts the rights of non-debtor third parties. The Order contains the mandate that Dixon "turn over to the Receiver . . .[all] items described in Exhibit A attached hereto." When read in conjunction with Exhibit A's additional instructions, [11] Appellants argue the following definitions are overly broad, "impermissibly" impacting the rights of third parties:

> "Defendant" includes every judgment defendant and every spouse or ex-spouse of the judgment defendant within two years of the signing of this Order.

> "Shareholder" includes the owners, members, partners and others who have ownership rights [in] any Entity.

---

[11] *See* Exhibit A, Section 6 under the sub-heading "Items, data, and records ordered Delivered to Receiver," stating: "For each defendant, Entity, and owner, Shareholder, or Manager of the Entity in the last three years, turn over all: (copies, etc.) . . ."

"Manager" refers collectively to anyone who is an officer, director, manager or supervisor of an Entity, or who makes business decisions for an Entity.

"Entity" includes all business organizations, whatever their form, including public or private corporations, limited liability companies, partnerships, joint ventures, unincorporated associations, and individual proprietorships.

Specifically, Appellants contend: (1) because the definition of "Defendant" includes Dixson's ex-spouse, a non-party, she will be required to turnover "exceedingly broad level[s] of documents" even if they pertain to her separate property; and (2) those third parties meeting the definitions of "Shareholders" or "Managers" in any relevant "Entity" will be unduly burdened by the provision of "large amounts of information . . . only because [Dixson] is a co-owner of that Entity."[12]

Next, claiming it allows the Receiver "to take control of books, records, and websites of . . . third party businesses merely if [Dixson] has an ownership interest in [same]," Appellants challenge the overbreadth of the following provision:

It is therefore Ordered that Receiver may: Take all action necessary to gain access to all books and records of [Dixson], including those of his businesses PDG, Inc., JFAL Holding Company, LLC, and *other entities in which [Dixson] has an ownership interest, and [. . .] take control of any website utilized by [Dixson's] businesses*. (emphasis per Appellants' briefing).

Appellants correctly assert that the Texas turnover statute may not be used to seize the assets of, or determine the substantive property rights of, a non-judgment third party. *Maiz v. Virani*, 311 F.3d at 345 (citing *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 77, 80 (5th Cir. 1995)); *WC 4th*, 2024 WL 1138568, at *9 (citing *Alexander Dubose*, 540 S.W.3d at 585–86) (confirming

---

[12] Appellants contend their list of challenged provisions "may not be entirely exhaustive" of the "potential third-party issues" presented by the Order. It is not, however, the responsibility of this Court to examine the record and determine what other provisions, if any, present "potential third-party issues," pursuant to Appellants' assertion. *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (confirming appellate court has no duty or right to perform independent review of record and applicable law to determine whether there was error). This Court considers only those issues specifically raised and appropriately briefed; all others are waived. *See* Tex. R. App. P. 38.1(i).

courts are generally barred from using "purely procedural" turnover Orders to determine the substantive rights of non-judgment third parties).[13] Doing so would circumvent our judicial system and breach the third party's due process rights. *See Ex parte Swate*, 922 S.W.2d 122, 125 (Tex. 1996) (Gonzalez, J. and Owen, J., concurring) ("Whether a turnover Order is enforceable . . . [against] a stranger to the lawsuit is a serious matter that goes to the very heart of due process."). Indeed, Texas courts recognize that "a turnover order may be enforced against a non-party to the judgment 'only by bringing a separate suit alleging a basis for enforcing the [subject] judgment against that party.'" *WC 4th*, 2024 WL 1138568, at *10 (omitting internal citations); *cf.*, *Mitchell*, 523 S.W.3d at 200 ("Intervention is a recognized option for a non-party seeking to protect its interest in property that is subject of a turnover motion.").

Appellants' concerns, however commendable, are misplaced: Appellants have no standing to complain about the Order's improper burden, if any, on third parties. *See Bahar*, 330 S.W.3d 379 (citing *Texas Association of Bus. V. Texas Air Control Board*, 852 S.W.2d 440, 444–45 (Tex. 1993)) (confirming judgment debtor lacked standing to appeal portion of order that sanctioned her attorney). "Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). Because standing is an element of jurisdiction, Appellants' lack of standing deprives this Court of subject matter jurisdiction over any provision challenged on the basis that it improperly impacts third parties.

---

[13] *See also Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chemical Co., L.P.*, 540 S.W.3d 577, 584, n. 37 (Tex. 2018) (per curiam), *superseded by statute on other grounds as stated in Vaccaro*, 655 S.W.3d at 489, n. 3 (citing *Maiz v. Virani*, 311 F.3d 334, 343 (5th Cir. 2002)) (noting "uncertainty among Texas trial courts over how aggressively they can enforce 'turnover orders which affect the rights of non-judgment debtors [a]s reflected in the conflicting decisions of the lower Texas appellate courts'").

"'Jurisdiction is [the] power to declare the law,' the U.S. Supreme Court has said, 'and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Dickson*, 698 S.W.3d at 237 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). As determined in the foregoing, where the challenged provisions do not constitute final, appealable orders, or where Appellants lack standing to argue the grounds asserted, we do not have jurisdiction. In regard to those provisions only, we dismiss the appeal.

## C. Divestiture provision authorized by turnover statute.

Unlike those considered above, we find Appellants have perfected a restricted appeal in regard to the final challenged provision:

> It is further Ordered that [Dixson] must [be] divested of any authority over any business he operates under an assumed name, including but not limited to PDG, Inc., JFAL Holding Company, LLC, and other entities in which [Dixson] has an ownership interest.

Because this provision effectively enjoins Dixson's exercise of authority in the applicable companies, it resembles a mandatory injunction and constitutes a final order for purposes of invoking appellate jurisdiction. *See Alexander Dubose*, 540 S.W.3d at 586 (citing *Schultz*, 810 S.W.2d at 740).

We review the issuance of a turnover Order for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). A trial court abuses its discretion if it in an unreasonable or arbitrary manner or without reference to guiding rules and principles. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Having already found that Appellants have satisfied the first three "jurisdictional" requirements under Rule 30, we turn to the merits. In order to prevail on a restricted appeal, Appellants must establish error from the face of the record. *Ex parte E.H.*, 602 S.W.3d at 495. "[E]rror that is merely inferred will not suffice." *Ginn v. Forrester*, 282 S.W.3d 430, 431 (Tex. 2009) (per curiam). The face of the record

13

consists of all papers on file in the appeal, including the reporter's record. *See Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam).

Appellants frame the overbreadth of this provision and its allegedly improper impact on third parties as trial court error. In support, Appellants cite §101.112(e–f) of the Texas Business Organizations Code, contending the statute "limits the ability of a judgment creditor *to deprive an owner of a membership interest or allow a judgment creditor to take control of the property of [the judgment debtor's] company.*" (emphasis added); *see also Jiao v. Xu*, 28 F.4th 591, 600 (5th Cir. 2022) (noting "[t]he Texas Supreme Court has not spoken to the interplay between turnover orders and §101.112(d) [of the Texas Business Organizations Code] . . . "). Putting aside whether the cited statute is applicable, the challenged provision neither deprives Dixson of a membership interest nor allows the Receiver to take control of the company. The provision simply divests Dixson of the exercise of authority during whatever timeline necessary to evaluate the interest for purposes of satisfying the Judgment, as authorized by the statute.[14] *See Vaccaro*, 655 S.W.3d at 488–89 (citing Tex. Civ. Prac. & Rem. Code § 31.002(a)). On that basis, we find no error and affirm the trial court's Order. To the extent Appellants' first point of error asserted the trial court erred by including the divestiture provision in the subject Order, it is overruled.

## IV. CONCLUSION

For the reasons discussed above, we dismiss the appeal as to those provisions which do not, in and of themselves, constitute final orders and as to those which Appellants lacked standing

---

[14] After the trial court makes a "factual finding that the property is subject to the possession and control of the judgment debtor," it is authorized under the turnover statute *to evaluate assets held by a third party but subject to the judgment debtor's control*. *See Barrera v. State*, 130 S.W.3d 253, 260 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (emphasis added); *Parks v. Parker*, 957 S.W.2d 666, 668 (Tex. App.—Austin 1997, no writ) ("The judgment debtor can also be ordered to turn over property, no matter who possesses it, if the property is subject to his control."); and *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276–77 (Tex. App.—Houston [14th Dist. 1994, no writ).

to challenge on the basis of third-party concerns. As to the remaining provision, we find no error and affirm.

MARIA SALAS MENDOZA, Chief Justice

February 20, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.